[Civ. No. 19899.   Second Dist., Div. Three.   May 12, 1954.]

GROVER C. NELSON et al., Respondents, v. EDITH S. DANGERFIELD, Appellant.

Halverson & Halverson and George Halverson for Appellant.

Wolford, Johnson & Pike and George Pike for Respondents.

WOOD (Parker), J.—Defendant appeals from judgment quieting plaintiffs' title to real property.

Defendant Mrs. Dangerfield and her husband saw an advertisement in a newspaper which stated that "a fine modern home" in El Monte "On full acre" and "in first class condition" was for sale. The property was owned by plaintiffs. The Dangerfields went to the property and saw Mr. Nelson who told them that the property was for sale but they should see the Wierman Realty Company at San Bernardino which was the exclusive agent for the sale. On August 28, 1948, at the office of that company, the Dangerfields signed an offer to purchase the property and made a deposit of $250. On August 30, 1948, they and the plaintiffs entered into a written agreement whereby the plaintiffs agreed to sell and the Dangerfields agreed to buy said property for $18,000 to be paid as follows: $4,000 at the time of executing the agreement, $125 when the buyers obtained possession, $125 a month thereafter for two years, and $100 a month thereafter. The buyers paid $4,000 and moved to the property about November 3, 1948. Mrs. Dangerfield testified that about May, 1949, they discovered that the land they had bought was not an acre of land but was "only a little over a third of an acre." The land was 80 feet in width and 250 feet in length (20,000 sq. ft.) or about .4591 of an acre. Within two or three days after such discovery the buyers told the sellers that they had found that the land was about one-third of an acre and that they wanted an adjustment to be made. The sellers replied that they (Nelsons) had purchased it as a full acre and that they would not do a thing about an adjustment. At that time the buyers also told the sellers that a wood furnace, electric logs for the fireplace, a window box, some screens, and plants, which belonged with the house, had been removed by the sellers and that the buyers wanted an adjustment regarding those matters. The sellers replied

to the effect that those things did not belong with the house. The buyers continued to make payments until July, 1950, although at times the full monthly payment was not made. On June 9, 1950, an attorney for the sellers notified the buyers by letter that they were delinquent in payments to the extent of $575; that they were delinquent in payment of taxes; and that unless the delinquent payments and taxes were brought up to date before July 15, 1950, the buyers' rights under the contract would be forfeited and an action to quiet title would be filed.

Mr. Dangerfield died in September, 1950, and Mrs. Dangerfield became the owner of the buyers' interest in the property. She will be referred to herein as the defendant.

On November 27, 1950, the attorney for defendant sent a letter to the plaintiffs enclosing a check for $721.42 and stating that it was to be applied on the contract. The check was accepted by plaintiffs. On April 2, 1951, the attorney for plaintiffs notified defendant by letter that she was delinquent in payments to the extent of $728.58; and that unless the payments were made and all taxes and insurance were paid her rights under the contract would be forfeited. On May 18, 1951, the attorney for plaintiffs wrote another letter to her stating that after he had written to her previously she stated that she would come to his office; that she had not come, and he had heard nothing from her; and that unless he heard from her by May 22, he would file an action. On May 20, she wrote a letter to said attorney requesting an extension of time to June 1, 1951, and stating that she did not have enough money but she thought she would have it by June 1. About June 3, 1951, the attorney and defendant talked by telephone—she said that she did not have the money; and he said that he would file a quiet title action. Thereafter and until the present action was filed on July 18, 1951, the attorney did not hear from her.

Defendant filed an answer and counterclaim. She denied the allegation of the complaint that her claim of an interest in the property was without right; and she denied the allegation that she had no right, title or interest in the property. In her counterclaim she alleged that representations made by plaintiffs and their agent that the premises constituted a full acre, and that the place was a modern home in first-class condition, were false; that the representations were known by plaintiffs to be false and were made for the purpose of inducing the buyers to enter into the agreement; that the representations did induce them to enter into the agree-

ment to the damage of defendant in the sum of $4,500, which amount should be applied in abatement of the purchase price of the property. She also alleged that by reason of said representations the plaintiffs "should be estopped from at- tempting to forfeit said agreement." She prayed that plain- tiffs take nothing; that $4,500 be applied as a credit on said agreement and that it be determined that the agreement is in good standing; and for such further relief as may be agree- able in equity.

The court found, among other things, that adequate notice of intention strictly to enforce the payments and the right of forfeiture was given to defendant; that when this action was commenced, on July 18, 1951, the amount due under the contract was $1,217.75; that at the time of judgment (October 6, 1952) the amount due was $2,717.75, plus taxes for two years.

The court also found that the real estate agent of the plaintiffs misrepresented, by a newspaper advertisement, the size of the lot as one full acre, whereas in fact the lot was less than one acre, being "80 feet wide by 250 feet"; that the agent represented that the place was "modern in first- class condition"; that plaintiffs had no knowledge of such representations; that the buyers, before entering into the agreement, undertook an independent investigation of the property as to dimensions, quantity, and quality, and by several detailed inspections of the property ascertained the true dimensions, boundaries, and quality of the lot; and that the buyers did not rely upon said misrepresentations as to the quantity or quality but relied upon their independent knowledge of the lot; and that under the circumstances the misrepresentations did not influence the buyers in making the agreement of sale. The court also found that the wood furnace, electric logs, window box, and screens were not fix- tures; and that a camellia plant (taken by sellers) was excepted from the agreement, and there was no evidence of removal of other plants. Those findings were supported by substantial evidence.

The judgment quieting plaintiffs' title provided that if within 60 days from the date of judgment the defendant paid said delinquent payments and taxes and any payments which might fall due after judgment, then the title of plain- tiffs would be quieted subject to said agreement of sale as valid and existing, but if she failed to pay said amounts then the title of plaintiffs should be quieted.

The evidence was sufficient to support the findings that

defendant was in default under the terms of the contract. There was evidence that the buyers had paid $6,946.42 on the purchase price of the property ($4,000 as down payment; $1,725 payment shown in book of installment credits [Exhibit C]; $500 and $721.42 not shown in that book).

In view of the evidence that about $7,000 had been paid upon the purchase price of $18,000, and in view of the issues presented by the counterclaim, and in view of the prayer for general relief, the court should have considered and determined the question as to whether a forfeiture of the money paid would result in unjust enrichment of plaintiffs. The court made no finding concerning the damages allegedly resulting from the failure to make the payments, nor did it find that it would be impracticable or extremely difficult to ascertain such damages. At the time the action was filed the defendant had occupied the property about three years; and at the time of judgment she had occupied it about four years. The court did not find that $7,000 (approximately) would be just compensation for the use of the property for said period of time. In *Freeman* v. *The Rector, Wardens & V. of St. Matthias Parish,* 37 Cal.2d 16 [230 P.2d 629, 31 A.L.R.2d 1], the plaintiff, who agreed to buy real property for $18,000, paid $2,000 down and agreed to pay $16,000 into escrow within 30 days. About 50 days later plaintiff repudiated the agreement and demanded the return of his deposit. About 20 days after the repudiation, plaintiff wrote defendant that he would take title and pay the balance. About 8 days later defendant sold the property for $20,000. The action was for specific performance or for damages for breach of contract. The judgment of the trial court insofar as it denied specific performance or damages for breach of contract was affirmed, but the judgment was reversed insofar as it denied plaintiff restitution of any part of his down payment. It was said therein at pages 19 and 20: "If defendant is allowed to retain the amount of the down payment in excess of its expenses in connection with the contract it will be enriched and plaintiff will suffer a penalty in excess of any damages he caused." It was also said therein at page 23: "Since a commission of $900 was retained by the broker from the down payment it is clear that defendant received from plaintiff at most $1,100. Defendant contends, however, that there were other expenses incurred in connection with the escrow that reduced the amount of the down payment received. Since the trial court erroneously concluded that plaintiff could recover no part of his down

payment, no finding was made as to the fraction that accrued to the net benefit of defendant. Accordingly, a new trial limited to that issue is appropriate.'' In the present case, a new trial limited to the issue as to the damage suffered by the plaintiffs as a result of the failure to make the payments is appropriate.

The judgment is reversed insofar as it denies defendant restitution of any part of the payments made by her, and the trial court is directed to try that issue only. In all other respects the judgment is affirmed. Each party to bear his own costs on appeal.

Shinn, P. J., and Vallée, J., concurred.