UNION BOND & TRUST COMPANY,
a corporation, Plaintiff,
v.
BLUE CREEK REDWOOD COMPANY,
Inc., Harold L. Ward, et al.,
Defendants.

Harold L. WARD et al., Cross-complainants,
v.
UNION BOND & TRUST COMPANY, a
corporation, et al., Cross-defendants.

No. 33618.

United States District Court,
N. D. California, S. D.

Feb. 10, 1955.

A. B. Dunne, Dunne, Dunne & Phelps, San Francisco, Cal., for plaintiff and cross-defendants.

Carlton L. Rank, Herman Cook, Hardin, Fletcher, Cook & Hayes, Oakland, Cal., for defendants and cross-complainants.

GOODMAN, District Judge.

This diversity case [1] poses the troublesome question of the nature and extent of the power of this Court, under uncertain California law, to mold a just and appropriate equity decree.

The assignors of the parties litigant, in May of 1946, entered into a timber purchase contract. The contract vendee agreed to purchase from the vendor certain timber lands for a price of $750,000 to be paid out of the proceeds of timber cut, with certain fixed minimum payments.

Their assignees proceeded under the contract. All went *reasonably* [2] well until $585,000 had been paid by vendees. Then certain defaults of the vendee (found by the Court to be wilful) occurred.

Plaintiff, assignee of the vendee, filed this action for a judgment declaring the contract to be in full force and effect and requiring specific performance of the vendor. Defendants, assignees of vendor, by answer, prayed that plaintiff be declared in default under the contract, and, by cross-complaint, prayed for damages caused by the default and also that their title to the timber land be quieted.

At the trial, the evidence showed that plaintiff was in default and that the default had continued for more than 60 days after plaintiff had been notified in writing by defendants of the default. The evidence further showed that on May

---

1. 28 U.S.C. § 1332.

2. There is some evidence of delays in payment and other dilatory tactics of vendee under the contract. These are not necessary to be considered in determining the issues presented.

12, 1954, defendants notified plaintiff by letter that the contract was cancelled. The notice of cancellation accorded with paragraph 12 of the contract which provided that in the event the vendee should continue in default for more than 60 days after written demand by the vendor for performance, the vendor was entitled to resume possession of the property, retain all payments made by the vendee and cancel the contract by notice. The contract also provided that time was of the essence.

It is clear, and the parties agree, that under California law, which governs by express stipulation of the contract and because this is a diversity suit, plaintiff is entitled to relief from any forfeiture imposed by the contract for his default. The point in issue is the form such relief should take. Plaintiff urges that relief can best be afforded by ordering a conveyance of the land to him upon his immediate payment of the balance of the purchase price as well as any damages to defendants resulting from the default. Defendants contend that plaintiff's default was wilful, and that a vendee in wilful default cannot be given the benefit of his bargain, but at most is entitled to restitution of any payments made in excess of the damages to the vendor.

Three California Civil Code sections are pertinent:

"§ 1492. *Compensation after delay in performance.* Where delay in performance is capable of exact and entire compensation, and time has not been expressly declared to be of the essence of the obligation, an offer of performance, accompanied with an offer of such compensation, may be made at any time after it is due, but without prejudice to any rights acquired by the creditor, or by any other person, in the meantime."

"§ 3275. *Relief in case of forfeiture.* Whenever, by the terms of an obligation, a party thereto incurs a forfeiture, or a loss in the nature of a forfeiture, by reason of his failure to comply with its provisions, he may be relieved therefrom, upon making full compensation to the other party, except in case of a grossly negligent, willful, or fraudulent breach of duty."

"§ 3369.

1. Neither specific nor preventive relief can be granted to enforce a penalty or forfeiture in any case * * * *."

Section 1492, specifically authorizes the kind of relief requested by plaintiff. But it is unavailing here, because, by its terms, it is not applicable to contracts which declare time to be of the essence, as is the case here.

Whether Sections 3275 and 3369 are applicable here, depends upon how they have been construed by the California Courts.

The early California cases, either overlooking or ignoring these Code sections, applied a strict rule of forfeiture against vendees defaulting under contracts declaring time to be of the essence. In 1898, the case of Glock v. Howard, 123 Cal. 1, 55 P. 713, 43 L.R.A. 199, without reference to either Code section, established the rule that a defaulting vendee seeking restitution of payments made under a contract declaring time to be of the essence could not recover in the absence of an equitable showing of surprise, mistake, or fraud. Similarly in quiet title actions, the Courts, without consideration of Section 3369, which prohibits granting specific relief to enforce a forfeiture, quieted title against defaulting vendees without requiring restitution of payments made.[3] Significantly, however, in these quiet title actions, the Courts, although not requiring restitution, in some instance conditioned the decree quieting title upon the vendee's failure to complete performance under

---

3. Oursler v. Thacher, 1908, 152 Cal. 739, 93 P. 1007; Schwerin Estate Realty Co. v. Slye, 1916, 173 Cal. 170, 159 P. 420; Myers v. Williams, 1916, 173 Cal. 301, 159 P. 982; Fresno Irrigated Farms Co. v. Canupis, 1918, 39 Cal.App. 184, 178 P. 300; Ross v. Gentry, 1928, 94 Cal.App. 742, 271 P. 1098.

the contract and compensate the vendor for damages within a specific period.[4] Thus even in the days when the rights of defaulting vendees were at their lowest ebb in California, it apparently was within the Court's discretion to afford the vendee an opportunity to carry out the contract before quieting title against him.

The California Courts soon modified their strict rule of forfeiture by holding it inapplicable when the vendor had waived or was estopped to assert the time provisions of the contract,[5] or had allowed the entire price to become due without declaring a forfeiture.[6] In some cases, the Courts invoked Section 3275 to grant relief to the vendee. But even in these cases, the Courts justified the application of the statute by a finding that the vendor had waived or was estopped to assert the time provisions of the contract,[7] or that the vendee had breached a condition subsequent rather than a condition precedent as in the Glock case supra.[8]

In 1949, in Barkis v. Scott, 34 Cal.2d 116, 208 P.2d 367, 368, the California Supreme Court applied Section 3275 to relieve a vendee who had breached a condition precedent under a "time of the essence" contract, in the absence of a waiver by the vendor. The Court distinguished the Glock case on the ground that it appeared from the facts of that case that the vendee could not have qualified for relief under Section 3275. Thus Barkis has established the rule that a defaulting vendee, who meets the requirements of Section 3275, can be relieved from forfeiture even though the vendee has breached a condition precedent and there has been no waiver of provisions of the contract making time of the essence. Moreover, the Supreme Court did not grant relief merely by ordering restitution of the payments made, but rather it sanctioned the restoration of the vendee to his rights under the contract. Indeed, the Court indicated that this form of relief would ordinarily be preferable to restitution. The Court said in this regard, at 34 Cal.2d 121, 208 P.2d 270, "A vendee in default who is seeking to keep the contract alive, however, is in a better position to secure relief than one who is seeking to recover back the excess of what he has paid over the amount necessary to give the vendor the benefit of his bargain after performance under the contract has terminated. In the latter situation it may be so difficult to compute the vendor's damages that the vendee will be unable to prove that the vendor will be unjustly enriched by allowing him to keep all the money that has been paid. (Cases cited.) * * * On the other hand, when the default has not been serious and the vendee is willing and able to continue with his performance of the contract, the vendor suffers no damage by allowing the vendee to do so. In this situation, if there has been substantial part performance or if the vendee has made substantial improvements in reliance on his contract, permitting the vendor to terminate the vendee's rights under the contract and keep the installments that have been paid can result only in the harshest sort of forfeitures. Accordingly, relief will be granted whether or not time has been made of the essence."

· Thus it is clear that a vendee who meets the requirements of Section 3275 may be relieved from any forfeiture ei-

---

4. Fairchild v. Mullan, 1891, 90 Cal. 190, 27 P. 201; Southern Pac. R.R. v. Allen, 1896, 112 Cal. 455, 44 P. 796; Odd Fellows' Sav. Bank v. Brander, 1899, 124 Cal. 255, 56 P. 1109.

5. Boone v. Templeman, 1910, 158 Cal. 290, 110 P. 947; Stevinson v. Joy, 1912, 164 Cal. 279, 128 P. 751; Hayt v. Bentel, 1913, 164 Cal. 680, 130 P. 432.

6. Boone v. Templeman, supra note 5; Hayt v. Bentel, supra note 5; Kerr v. Reed,

1921, 187 Cal. 409, 202 P. 142; Bank of America v. Ries, 1932, 128 Cal.App. 75, 16 P.2d 1018.

7. McDonald v. Kingsbury, 1911, 16 Cal. App. 244, 116 P. 380; Bedell v. Barber, 1947, 80 Cal.App.2d 806, 182 P.2d 591; Flanery v. Mudd, 1948, 86 Cal.App.2d 250, 194 P.2d 806.

8. Ebbert v. Mercantile Trust Co., 1931, 213 Cal. 496, 2 P.2d 776.

ther by restoring him to his rights under the contract, or, as cases subsequent to Barkis have established,[9] by awarding him restitution of payments made in excess of the vendor's damage. Had the plaintiff here been able to qualify for relief under Section 3275, the form of relief which he seeks could be granted under that Section. But, as defendants assert and as the evidence showed, plaintiff fails to qualify because his default was wilful within the meaning of Section 3275.

An alternative basis for the relief sought by plaintiff is indicated, however, by the decision of the California Supreme Court in Freedman v. Rector, 1951, 37 Cal.2d 16, 230 P.2d 629, 632, 31 A.L.R. 2d 1, some two years after the Barkis decision. In the Freedman case, the vendee under an installment contract for the purchase of land sued for specific performance. The trial Court found that the vendee was in wilful default and therefore not entitled to relief under Section 3275 and gave judgment for the defendant vendor. On appeal, the Supreme Court agreed that relief under Section 3275 was precluded, but held that Section 3275 was not exclusive, but merely permissive, and that an alternative basis for the relief of a vendee in wilful default is provided by the damage provisions of the Civil Code and by the policy of the law against penalties and forfeitures.

The damage provisions of the Civil Code referred to by the Court are Section 3294,[10] which provides for exemplary damages for the breach of certain obligations *not* arising from contract, and Sections 1670 and 1671,[11] which vali-date contractual provisions for liquidated damages in situations where it would be impracticable or extremely difficult to fix the actual damage. It would be inconsistent with these provisions, the Court said, to permit what are, in effect, punitive damages merely because a party has partially performed his contract before his breach. Section 3294 expresses the policy of the law against the allowance of exemplary damages for breach of contract regardless of the nature of the breach. Sections 1670 and 1671 prevent the enforcement of a provision for the forfeiture of installment payments as a valid provision for liquidated damages, when it would not be impracticable or extremely difficult to fix the actual damages.

The Court in Freedman also stated that to deny the vendee relief, because his breach is wilful, would create an anomalous situation when considered with Section 3369 of the Civil Code, supra, which provides that "Neither specific nor preventive relief can be granted to enforce a penalty or forfeiture in any case." That Section, the Court said, "precludes the court from quieting the vendor's title unless he refunds the excess of the part payments over the damage caused by the vendee's breach. * * Unless the same rule is adopted when the vendee seeks restitution, the rights of the parties under identical fact situations will turn on the chance of which one first seeks the aid of the court."

In Freedman, the Supreme Court held that the defaulting vendee was entitled to restitution of payments made in excess of the vendor's damage. Relief in the

9. See Baffa v. Johnson, 1950, 35 Cal.2d 36, at page 38, 216 P.2d 13.

10. Section 3294. "In an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, express or implied, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant."

11. Section 1670. "Every contract by which the amount of damage to be paid, or other compensation to be made, for a breach of an obligation, is determined in anticipation thereof, is to that extent void, except as expressly provided in the next section."

Section 1671. "The parties to a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage."

form of specific performance was necessarily denied the vendee, however, since the trial court had found that the vendee had, apart from his default, rescinded the contract, and that, before the rescission was revoked, the vendor had sold the property to another.

Under the Freedman rule it is clear that the plaintiff here, even though in wilful default, is at least entitled to relief in the form of restitution of payments made in excess of the defendants' damage. The pertinent remaining question is whether the Freedman rule is broad enough to permit relief in the form of an opportunity to complete the contract, upon compensating the defendants for their damage. The refusal of the court to grant such relief in the Freedman case does not preclude it here since in Freedman the vendee had, apart from his default, rescinded the contract and the property was thereupon sold to another. The grounds upon which the Court in Freedman allowed restitution should equally justify relief in the form of an opportunity to complete the contract in a proper case.

The basis upon which the Court afforded relief in Freedman was the Code sections expressing a policy against permitting forfeitures or exemplary damages for breach of contract. These sections, the Court said, require that a vendee in wilful default be relieved from any forfeiture, just as Section 3275 permits relief to be accorded a vendee whose default is not wilful. But these Code sections do not prescribe the form such relief should take any more than does Section 3275. In granting relief from forfeiture under Section 3275, in Barkis, supra, the Supreme Court seemed to take it for granted that a proper method, and indeed the preferable one, was to permit the vendee to carry out the contract.

Defendants here urge that a vendee in wilful default should not be relieved from a forfeiture by permitting him to complete performance under the contract because he would then be receiving the benefit of his bargain. But, this argument amounts to no more than the contention that the Court should punish a vendee in wilful default by denying him an opportunity to complete the contract, even though in some manner it must relieve him from the forfeiture. Yet the *policy* against the imposition of a penalty for breach of contract is the very basis for the holding in Freedman that a vendee in wilful default must be relieved from any forfeiture. Certainly, then, the determination of the form such relief should take should not be conditioned by a purpose to penalize the vendee.

The California Supreme Court also said in Freedman that the rights of the vendor and vendee should not turn on the chance of which one first seeks the aid of Court. The Court stated that Section 3369 of the Civil Code prohibiting the enforcement of forfeiture precludes a Court from quieting the vendor's title unless he refunds the excess of the part payments over his damages. The same rule, the Court said, should be followed when the vendee seeks restitution.

But, as has been noted, the California Courts previously had paid no heed to Section 3369 in quiet title actions and had entered decrees quieting title without requiring restitution. They had, however, in some instances given the vendee an opportunity to complete the contract, and it appears to be the established rule that it is within the discretion of the Court to do so.[12] Thus if the

---

12. See Los Angeles Auto Tractor Co. v. Superior Court, 1928, 94 Cal.App. 433, 271 P. 363; Veterans' Welfare Board v. Burt, 1935, 4 Cal.App.2d 659, 41 P.2d 587. In the recent case of Nelson v. Dangerfield, 1954, 125 Cal.App.2d 146, 269 P.2d 953, the trial court entered a judgment quieting the plaintiff vendor's title against the vendee, in default, unless within 60 days the vendee paid the delinquent payments and taxes. On appeal, the District Court of Appeals approved the judgment in so far as it went, but held, citing Freeman v. Rector, 37 Cal.2d 16, 230 P.2d 629, that the trial court should not have denied the vendee restitution of any payments made in excess of the damage to the vendor. Ap-

vendee is to have the same rights when he invokes the aid of the Court, as when the vendor seeks to quiet title, the Court should have the discretion in either situation to give the vendee an opportunity to complete the contract.

While this view has not been precisely stated by the highest Courts of California, I am of the opinion that they would so hold if called upon to resolve the facts of this case.[13] Barkis and Freedman point the way towards that end.[14]

Some of the considerations which might enter into the exercise of the Court's discretion were indicated by the Supreme Court in Barkis. The Court noted that in some cases it would be difficult to compute the vendor's damages if the contract were terminated. The Court suggested, that if the vendee were able and willing to complete the contract, and had made substantial part performance, or substantial improvements on the property, completion of the contract would best protect the rights of the parties.

In the present case, the plaintiff has made substantial payments under the contract and has made substantial improvements on the property. Because of conflicting estimates of value, the vendor's damages may be difficult to determine, if the contract is terminated. Consequently the just and equitable course would appear to be to enter a preliminary decree permitting plaintiff to complete the contract within a specified time by paying the entire purchase price together with the defendants' damages resulting from the delay in performance.

Accordingly, an interlocutory decree will be entered as follows:

(1) The plaintiff may complete the contract of purchase by paying the entire

---

parently the Court of Appeals meant that the trial court should have conditioned the decree quieting title, not only so as to give the vendee an opportunity to complete the contract, but also to give the vendee restitution of any payments made in excess of the vendor's damage, in the event the vendee was unable to carry on under the contract within the time specified in the judgment.

13. Federal Courts in diversity cases are " 'called upon to determine as best we may what the highest court of California would hold if confronted with the controversy now presented to us.' " Compania Engraw, etc., v. Schenley, 9 Cir., 181 F.2d 876, 879. See also Hughes v. Mutual Life Ins. Co., 9 Cir., 180 F.2d 542; State of California, Dept. of Employment v. Fred S. Renauld & Co., 9 Cir., 179 F.2d 605.

14. For discussions of the development of the law in California in respect to the rights of defaulting vendees and the effect of the Barkis and Freedman decisions see: 18 California Law Review 681 (1930); 20 California Law Review 194 (1932); 27 California Law Review 587 (1939); 37 California Law Review 704 (1949); 2 Stanford Law Review 235 (1949); 23 Southern California Law Review 110 (1949); 40 California Law Review 593 (1952).

After submission of this cause, counsel for defendants called the attention of the court to the recent decision of the California Supreme Court in Bird v. Kenworthy, 277 P.2d 1. In that case, after the vendor of certain tractors sold under a conditional-sales contract had repossessed them for a default in payments, the vendee sued for rescission of the contract or for relief from forfeiture. The trial court gave judgment for the defendant vendor, and this judgment was affirmed by the Supreme Court on the appeal. The Supreme Court agreed that the asserted ground for rescission of the contract—that the vendor wrongfully repossessed the tractors—had not been established. Upon the issue of relief from forfeiture, the Supreme Court sustained the finding of the trial court that the vendee was guilty of a wrongful default which precluded the application of Section 3275 of the Civil Code. As well, the Court approved the finding that the rental value of the tractors while in the vendee's possession exceeded the payments forfeited under the contract. Consequently, the Court held, no forfeiture was incurred which required relief under the Freedman rule.

Since in Bird there was no forfeiture requiring relief, that case affords no guidance in determining the nature of the relief that may be granted in a case such as the present one where there would be a forfeiture requiring relief.

unpaid purchase price within 60 days from date hereof.

(2) Within 10 days thereafter the Court will hear evidence as to defendants' damage, limited to

(a) interest on past due payments;

(b) cost of investigating plaintiff's defaults; and

(c) costs and expenses of suit and trial including reasonable attorney's fees.

Final decree will then enter adjudging the amount of damages due defendant.

(3) In the event plaintiff fails to pay the unpaid purchase price within the time specified in (1), the Court will enter an interlocutory decree quieting vendor's title to the property and within 10 days thereafter will hear any further evidence and/or argument the parties wish to present as to the amount of restitution to be made to the plaintiff and will thereupon enter final decree adjudging the rights and liabilities of the parties.

Counsel will present findings and interlocutory decree within 10 days.