[Civ. No. 20804. Second Dist., Div. Three. Sept. 28, 1955.]

RAYMOND E. PETERSEN et al., Respondents, v. CALVIN H. RIDENOUR, Appellant.

William R. Grant and Arline Edythe Saylin for Appellant.

Robert H. Green for Respondents.

ASHBURN, J. pro tem.*—Plaintiffs Petersen sued defendant Ridenour to quiet title to a certain residence property which was owned in fee by plaintiffs on November 15, 1948. On that day they entered into a contract to sell the property to the Ridenours for a price of $10,600, payable $750 down, and $100 on January 1, 1949, and $100 on the first day of each succeeding month for 30 months and thereafter $56.85 per month "until the full balance of the F.H.A. and G.I. Loans are paid," with interest at the rate of 6 per cent per annum payable monthly for 30 months and thereafter at the rate of 4 per cent per annum; purchaser to pay all taxes and assessments, and keep the buildings fully insured. The complaint is in the familiar form used in quiet title actions. The answer, in addition to denials, pleads an alleged written contract of November 11, 1948, providing in effect that payments of $100 a month be made until "paid down to G. I. Loan. Then payments of approximately $56.50 per month including taxes, interest, insurance and principal." Defendant Calvin H. Ridenour, alleging he had succeeded to the rights of his codefendant, G. Aline Ridenour, interposed a cross-complaint against the Petersens alleging the same purported contract of November 11, 1948; also that the agreement of November 15, 1948, purported to contain the terms of the November 11 agreement, that it was prepared by cross-defendants' agent under their instructions and was signed by both Ridenours "without the advice or benefit of legal counsel." It was then alleged that all payments were made as required by the November 11 writing; that cross-defendants were claiming large arrearages and had given notice of default; that the contract of November 15 "is ambiguous and unintelligible in its terms and does not reflect the true and correct agreement of said parties to said sale"; that a bona fide controversy exists; that cross-complainant sues' for a declaration of his rights and obligations in the premises, "including the construction to be given to the agreement as herein set forth." He also requests that the written agreement "be reformed to conform to the true agreement of the parties" as reflected by the November 11 writing. There is no allegation of fraud or mistake or any other fact which would afford basis for a reformation. (Civ. Code, § 3399.)

The copy of the alleged contract of November 11 attached

*Assigned by Chairman of Judicial Council.

to the pleading does not purport to carry any signature of the sellers, the Petersens. And the evidence shows without conflict that they never did sign it. They had no personal contacts with the Ridenours, and the court found that the only contract which was ever made was that of November 15, 1948. It also found that that contract "is not ambiguous nor unintelligible in its terms or in any part thereof." That such is the case is manifest from the language of the instrument, viz.: ". . . the Buyer, in consideration of the premises, agrees to buy and to pay to the Seller, the said sum of . . . Ten Thousand Six Hundred and no/100 . . . Dollars, as follows, to-wit: . . . Seven Hundred and Fifty and no/100 . . . Dollars, upon the execution and delivery of this agreement, receipt of which is hereby acknowledged and the further sum of . . . One Hundred and no/100 . . . Dollars on the First day of January, 1949, and . . . One Hundred and no/100—or more, on the First Day of each and every calendar month for thirty months thereafter and then . . . Fifty Six and 85/100 . . . until the full balance of the F.H.A. and G.I. Loans are paid, with interest at the rate of 6 per cent per annum payable Monthly for Thirty Months and then at rate of 4% per annum from date." This plainly calls for payments of principal in specified amounts ($100 or $56.85) plus interest at a prescribed rate. The court found that such interest payments were never made, and the evidence so shows. It was also found that defendants, after notice of default given them, failed to cure same, and that said notice by its terms terminated and cancelled the contract "and *forfeited* to the plaintiffs any interest that the defendants had by the terms of the said agreement dated November 15, 1948." (Emphasis added.) Upon this basis a decree quieting title in plaintiffs was entered, and this appeal was taken by defendant and cross-complainant Calvin H. Ridenour.

Counsel for defendants insisted at the trial that the contract of November 15 was ambiguous and offered certain parol evidence relative to its meaning in an effort to show that the interest was intended to be included in the $100 monthly payments. The court received the same over objection, remarking that "if it isn't proper, of course the Court will disregard it. We can argue the legal part of it later." Having concluded that the instrument was not ambiguous the judge did disregard the parol evidence as he was bound to do. ██ For the parol evidence rule is one of substantive law and where, as here, it is improperly admitted it must

be wholly disregarded even if no objection was made to its introduction. (18 Cal.Jur.2d § 256, p. 740; *Hale* v. *Bohannon,* 38 Cal.2d 458, 465 [241 P.2d 4].) The evidence showed conduct on both sides which would amount to a practical construction of the contract in harmony with defendants' contention were it not for the fact that practical construction has no place in the consideration of an unambiguous agreement. (12 Cal.Jur.2d § 129, p. 342.)

 The proof was no more potent than the pleading with respect to reformation. There is no suggestion of fraud. And any mistake was one made by defendants alone, one which was neither known to nor suspected by plaintiffs. They never knew anything about the proposal of November 11. They signed the agreement of November 15 before it was presented to defendants; Mr. Ridenour read it twice before signing and noted the provision for $100 a month for 30 months with interest at 6 per cent. Without any further conversation with anyone, so far as appears, he and his wife signed the instrument at once. He never saw Mr. Petersen prior to the trial and had only one telephone conversation with him, which was long after the signing of the contract; nor did he have any conversations with Mrs. Petersen so far as appears. There was no basis for reformation of the contract.

Counsel for appellant argue on this appeal that *Barkis* v. *Scott,* 34 Cal.2d 116 [208 P.2d 367] and *Crofoot* v. *Weger,* 109 Cal.App.2d 839 [241 P.2d 1017] are applicable. They, and later cases which follow and in at least one respect modify the Barkis ruling,[1] hold that the vendor cannot terminate the vendee's rights under the contract except upon conditions which preclude unjust enrichment of the vendor. But those cases do not help appellant, except indirectly, for the factual record made by him does not extend to the question of unjust enrichment.

This is a quiet title action. The Supreme Court has said of this type of vendor's relief: "Similarly, although a quiet title action is equitable in nature [citing cases], and equity cannot 'enforce a penalty or forfeiture in any case'

---

[1] See *Baffa* v. *Johnson,* 35 Cal.2d 36 [216 P.2d 13]; *Norris* v. *San Mateo County Title Co.,* 37 Cal.2d 269 [231 P.2d 493]; *Freedman* v. *Rector, Wardens & V. of St. Matthias Parish,* 37 Cal.2d 16 [230 P.2d 629, 31 A.L.R.2d 1]; *Royer* v. *Carter,* 37 Cal.2d 544 [233 P.2d 539]; *Bird* v. *Kenworthy,* 43 Cal.2d 656 [277 P.2d 1]; *Major-Blakeney Corp.* v. *Jenkins,* 121 Cal.App.2d 325 [263 P.2d 655]; *Furst* v. *Scharer,* 119 Cal. App.2d 605 [260 P.2d 198]; *Nelson* v. *Dangerfield,* 125 Cal.App.2d 146 [269 P.2d 953].

[citing cases], it is generally held in the absence of a showing that the vendor will realize more than the benefit of his bargain that he may quiet his title to the property without refunding any part of the price paid." (*Barkis* v. *Scott*, 34 Cal.2d 116, 120-121 [208 P.2d 367].) "Section 3369 provides that 'Neither specific nor preventive relief can be granted to enforce a penalty or forfeiture *in any case. . . .*' (Italics added.) . . . if he is able to prove that the vendor has received more than the benefit of his bargain, the court is precluded by section 3369 from quieting the vendor's title unless he refunds the excess." (*Baffa* v. *Johnson, supra,* 35 Cal.2d 36, 39.) "Moreover, to deny the remedy of restitution because a breach is wilful would create an anomolous situation when considered with section 3369 of the Civil Code. That section provides that 'Neither specific nor preventive relief can be granted to enforce a penalty or forfeiture in any case . . . ,' and precludes the court from quieting the vendor's title unless he refunds the excess of the part payments over the damage caused by the vendee's breach." (*Freedman* v. *Rector, Wardens & V. of St. Matthias Parish, supra,* 37 Cal.2d 16, 22.)

█ The burden rests upon the vendee to prove that the payments made by him exceed the vendor's damages. (*Bird* v. *Kenworthy, supra,* 43 Cal.2d 656, 659 ; *Baffa* v. *Johnson, supra,* 35 Cal.2d 36, 39-40 ; *Major-Blakeney Corp.* v. *Jenkins, supra,* 121 Cal.App.2d 325, 332 ; *Barkis* v. *Scott, supra,* 34 Cal.2d 116, 120.) █ The defendants at bar made no real effort to carry this burden. It appears that they have had possession of the premises ever since the deal was made in 1948 ; the rental value is not shown ; what the fair value of the property was at time of breach of contract was not proved. Matters such as these are essential to determination of whether there would be unjust enrichment resulting from a judgment quieting title. (*Baffa* v. *Johnson, supra,* 35 Cal.2d 36, 39 ; *Bird* v. *Kenworthy, supra,* 43 Cal.2d 656, 659 ; *Nelson* v. *Dangerfield, supra,* 125 Cal.App.2d 146, 149.) There is no basis in the record for application of the unjust enrichment rule.

█ But appellants' real contention is that the Barkis and Crofoot cases "make it mandatory for the trial judge to fully determine the issues listed by the pleadings and if there is any balance due respondent from appellant the trial judge should have given appellant an opportunity to pay the same. By failing to do so, appellant contends that irrespective of other errors, the trial judge committed reversible error in this proceeding." Counsel also say that "Even if we assume that

there would exist any delinquent interest appellant earnestly contends that it was the duty of the trial court to determine what amount, if any, was in arrears, and to give to appellant an opportunity to pay that amount.'' And there is basis in the pleadings and evidence for the claim, though it does not properly rest upon the Barkis line of cases. (See page 119 of 34 Cal.2d.) The cross-complaint alleges payment of $100 per month for 31 months; that the later installments were increased from $56.85 to 65.85 and that they were paid from July 1, 1951, to November 1, 1952 (this suit was filed on September 26, 1952), and that ''Each and every payment referred to herein has been accepted by cross-defendants and/or their agents''; that cross-complainant was notified about October 1, 1951, that he had not performed the agreement, but the nature or amount of the alleged deficiency was never disclosed until notice of default was received on August 8, 1952; that it claimed arrearage of interest on the thirty-one $100 installments in a total amount of $1,582.96; arrearage in taxes of $600, and in insurance of $250. Cross-complainant also alleges the existence of a bona fide controversy concerning the agreement of November 15, 1948, and that ''cross-complainant brings this action for a declaration of his rights and obligations in the premises, including the construction to be given to the Agreement as herein set forth.'' In a second count he also says ''The cross-complainant further offers hereby to pay the amount of any arrearage, if any, that may be determined by this action to be due cross-defendants.'' The cross-complaint contains no prayer except a ''request'' for reformation which appears in paragraph II of the second cause of action. ▌ But the absence of a prayer is not fatal, the court being charged under section 580 Code of Civil Procedure with the duty in a contested case of granting any relief consistent with the case made by the complaint and embraced within the issue. (*Hoffman* v. *Pacific Coast Const. Co.,* 37 Cal.App. 125 [173 P. 776]; *Murphy* v. *Stelling,* 8 Cal. App. 702, 707 [97 P. 672]; *Miller* v. *Superior Court,* 59 Cal. App. 334, 339 [210 P. 832].) The cross-complaint was treated by court and counsel as sufficient. One count sought declaratory relief and the other an opportunity to cure any default found by the court.

▌ It is fundamental that equity, having taken jurisdiction, will grant complete relief. This is especially true in a declaratory judgment action. ▌ ''If a controversy exists as in this proceeding and a complaining party is entitled to

some relief a trial court may not refuse to declare the rights of the parties concerning the controversy. (*Lord* v. *Garland*, 27 Cal.2d 840 [168 P.2d 5].) ▮ The purpose of the action is to set at rest or at least quiet, until the occurrence of further events, the rights and relations of the parties. (*Columbia Pictures Corp.* v. *DeToth*, 26 Cal.2d 753 [161 P.2d 217, 162 A.L.R. 747].) '' (*Weber* v. *Marine Cooks' & Stewards' Assn.*, 93 Cal.App.2d 327, 339 [208 P.2d 1009].) ▮ Complainant's relief may consist only of a declaration that he has no rights except an adjudication of that fact, but to that much he is entitled in any event. (*Columbia Pictures Corp.* v. *DeToth*, 26 Cal.2d 753, 760 [161 P.2d 217, 162 A.L.R. 747].) ▮ In *American Enterprise, Inc.* v. *Van Winkle*, 39 Cal. 2d 210, 219 [246 P.2d 935], it is said: ''In an action for declaratory relief, the proper function of the court is to make a full and complete declaration, disposing of all questions of rights, status or other legal relations encountered in construing the instrument before it.'' The pleading was sufficient to raise the question of whether defendants were entitled to an opportunity to cure any default and to require an answer to that question.

The averment of an offer to pay any arrearages found to exist invoked another line of applicable cases, having to do with termination of a vendee's rights at the suit of the vendor. ▮ A quiet title action brought to terminate a contract for sale of realty is essentially a strict foreclosure. (*Warner Bros. Co.* v. *Freud*, 138 Cal. 651, 654 [72 P. 345] ; 27 Cal. L.Rev. p. 584, n. 6.) And in ''such case the court finds the amount unpaid, and decrees that it be paid on or before a day stated, and upon failure to make the payment that defendant's equity be foreclosed'' (Warner Bros. at p. 654), this because it is ''in consonance with equity.'' (*Kornblum* v. *Arthurs*, 154 Cal. 246, 249 [97 P. 420].) That this is the proper practice is also held in *Keller* v. *Lewis*, 53 Cal. 113, 118; *Southern Pac. Co.* v. *Allen*, 112 Cal. 455, 462 [44 P. 796] ; *Odd Fellows' Sav. Bank* v. *Brander*, 124 Cal. 255, 257 [56 P. 1109] ; *Cross* v. *Mayo*, 167 Cal. 594, 605 [140 P. 283].) ▮ The facts proved in this case demand an application of this equity rule and spell error in the court's giving effect to plaintiffs' ''forfeiture'' of defendant's interest without consideration of this principle. Defendant made 31 payments of $100 each, with no interest added, and they were accepted without complaint or demand for more. The necessary amounts were paid by plaintiffs' collecting agent upon exist-

ing G.I. loans (originally $56.85 per month) and the balance transmitted to plaintiffs. This included the payment for July 1951. When the contract was made plaintiffs figured they had an equity of $1,913.06 which was reduced to $1,163.06 by the down payment of $750.00; Petersen figured he would be paid out in 30 months through the $100 payments. This on the basis of his receiving $43.15 ($100–$56.85) for 30 months, total $1,294.50. The taxes went up to the extent of $9.00 a month (apparently this was after the $100 payments had been completed) and, though defendant's agreed principal payments were $56.85 a month, he was notified by the Petersens to pay to the bank $65.85 and this he did for a year and a half (nothing to the Petersens), then $63.85 for another year and thereafter $59.85 per month, continuing until time of trial. Defendant Ridenour testified without contradiction that Mr. Petersen telephoned him in April or May 1951 that he owed $270; defendant denied the debt and asked an explanation but "he couldn't explain it to me why he figured I owed him any money," and never did undertake to do so. Matters then continued their settled course until August 10, 1952, when notice of default was served, claiming $1,582.96 interest, $600 taxes and $250 insurance payments to be in arrears and that notice, as found by the court, by its terms "terminated and cancelled the contract . . . and forfeited to the plaintiffs any interest that the defendants had by the terms of said agreement dated November 15, 1948."[2] The notice had been received on or before August 13, 1952, and was followed by the filing of suit to quiet title on September 26, 1952.

Though the evidence was ineffective for the purpose of varying the terms of the contract, defendant's testimony that he was told and believed that the $100 monthly payments would include all interest, taxes and insurance, has a legitimate bearing upon this question of what the equities were in the matter of giving him an opportunity to cure his defaults—especially when it is considered in the light of plaintiffs' own understanding and his acceptance, without interest and without a murmur, of defendant's payments, which were first declared inadequate on August 10, 1952, almost four years

---

[2]The contract makes time of the essence. "IT IS UNDERSTOOD AND AGREED, that time is of the essence of this contract and should the Buyer fail to comply with the terms hereof, then the Seller may at his option be released from all obligations in law and in equity to convey said property, and the Buyer shall there-upon forfeit all right thereto and to all moneys theretofore paid under this contract as liquidated damages, . . ."

after the payments began. At the trial the claims of delinquent taxes and insurance were ignored and thus abandoned, and plaintiff testified that the accrued interest amounted to $1,364.56. Defendant said in his answer that he would pay any adjudged deficiencies. Though there was no plea of waiver or estoppel, the facts above reviewed made it legally impossible for plaintiffs to take snap judgment on defendants and thereby to forfeit their interest without any previous opportunity to make good—to save their home. (See *Boone* v. *Templeman,* 158 Cal. 290, 294-295 [110 P. 947, 139 Am.St.Rep. 126]; *McCartney* v. *Campbell,* 216 Cal. 715, 720 [16 P.2d 729]; *Gonzalez* v. *Hirose,* 33 Cal.2d 213, 216 [200 P.2d 793]; *McLane* v. *Van Eaton,* 60 Cal.App.2d 612, 616 [141 P.2d 783]; 66 C.J. par. 383, p. 782.) The Gonzalez opinion concludes as follows: ''It is apparent, under the circumstances of this case, that the result would be unconscionable if the defendant be not afforded the relief requested. The unqualified judgment is therefore unsupported. The plaintiff is entitled only to a qualified judgment containing a provision that a deed be executed and delivered conveying title to the property to the defendant upon payment to the plaintiff of the amount due him, within such time as the trial court may deem to be reasonable.'' That language aptly applies to the situation at bar. However, the reversal herein should be general so that the parties may have an opportunity to make appropriate amendments to their pleadings and to try the cause with reference to the rules of law which properly govern its disposition.

Judgment reversed.

Wood (Parker), J., and Vallée, J., concurred.