Harold L. WARD et al., Appellants,

v.

UNION BOND & TRUST COMPANY, a corporation, Appellee.

No. 14996.

United States Court of Appeals Ninth Circuit.

April 17, 1957.

Rehearing Denied June 7, 1957.

15. See note 1, supra.

16. Clark v. Woodward Const. Co., 10 Cir., 1950, 179 F.2d 176.

17. Dally v. Commissioner, 9 Cir., 1955, 227 F.2d 724.

Cyril Viadro, San Francisco, Hardin, Fletcher, Cook & Hayes, Carleton L. Rank, Oakland, Cal., for appellants.

Dunne, Dunne & Phelps, Arthur B. Dunne, Louis L. Phelps, Edward V. Mills, Jr., San Francisco, Cal., for appellee.

Before STEPHENS and FEE, Circuit Judges, and EAST, District Judge.

EAST, District Judge.

### Jurisdiction

These proceedings were instituted in the District Court of the United States for the Northern District of California, Southern Division, by the Appellee, Union Bond & Trust Company, an Oregon corporation (Union) against Blue Creek Redwood Company, Inc., a dissolved Delaware corporation, Harold L. Ward, together wtih a number of individual defendants, all citizens and residents of the State of Michigan (Ward). The proceedings are of a civil nature, cognizable as a case in equity with the amount in controversy in excess of $4,000.[1]

### Statement of Case

In the language of the District Court, it was presented with "the troublesome question of the nature and extent of the power of this Court under uncertain California law, to mold a just and appropriate equity decree."

On May 1, 1946, A. K. Wilson, the assignor of Union, as the buyer, and Blue Creek Redwood Company, Inc., aforesaid, the assignor of Ward, as seller, entered into a contract for the purchase and sale of certain timber lands in Humboldt County, California, at and for a total purchase price in the resulting aggregate amount of $750,000, to be paid at an established rate per thousand feet upon the removal of the timber with a fixed minimum annual payment of $40,-000. The contract was in the nature of a unilateral contract in that Ward agreed and was bound to sell upon the performance of certain conditions by the buyer. However, there was no contractual obligation on the part of the buyer to pay the purchase price except by making the payments specified in the contract and otherwise complying with its terms as to cutting rights in order to eventually obtain title to the land and timber.

Union proceeded to exercise these rights and otherwise proceeded under the contract and while there is some evidence of delay in payment and other dilatory tactics of the vendee under the contract, they were not treated as so material as to precipitate action to cancel the contract to purchase by Ward.

---

[1] 28 U.S.C. § 1332, and 28 U.S.C. § 1291.

A total sum of $585,000 had been paid by Union towards the purchase price and Union had made substantial improvements on the property [2] when certain defaults of the vendee occurred which defaults were found by the District Court to be wilful defaults.

Union failed to correct these defaults within sixty days after written notice, whereupon Ward notified Union, on May 12, 1954, by letter, that the contract was cancelled in accordance with paragraph 12 of the contract, which provided that in the event the vendee should continue in default for more than sixty days after written demand by the vendor for performance, the vendor was entitled to resume possession of the property, retain all payments made by vendee and cancel the contract by notice. The contract also provided that time was of the essence.

On May 20, 1954, only eight days later, Union filed its complaint in these proceedings, praying for a judgment declaring the contract of sale to be in full force and effect giving it an opportunity to cure its defaults and comply with the agreement, and requiring specific performance of the same by the vendor. Ward, by answer, prayed that Union be declared in default under the contract and by cross-complaint prayed for damages caused by the default and also that their title to the land be quieted. Thus we find all parties to these equitable proceedings seeking affirmative equitable relief as to their respective equities. At this juncture it is manifest that Union's equity in the property far outweighed the equity of Ward under their retention of legal title of the real property as security for the payment of the balance of the purchase price.[3]

District Court's Decree and Judgment

In recognizing and protecting these equities, respectively, the District Court provided by its interlocutory decree: [4]

1. That Union may complete the contract to purchase by paying the entire unpaid purchase price in the amount of $164,140.03, within sixty days from the date thereof. (Which included sums accrued and an acceleration of payments maturing under the contract by more than a year and in the amount of some $76,000);

2. That the Court would, within ten days, hear evidence as to Ward's damages, limited to:

(a) Interest on past due payments;

(b) Costs of investigating Union's default; and

(c) Costs and expense of suit and trial including reasonable attorney's fees.

3. In the event plaintiff fails to pay the unpaid purchase price within the time specified in 1, the Court will enter an interlocutory decree quieting vendor's title to the property and within ten days thereafter will hear any further evidence and/or argument the parties wish to present as to the amount of restitution to be made to the plaintiff and will thereupon enter final decree adjudging the rights and liabilities of the parties.

Thereafter, in due course, the District Court heard evidence and fixed defend-

2. District Court Memorandum, Union Bond & Trust Co. v. Blue Creek Redwood Co., 128 F.Supp. 709.

3. "Where the title is retained by the seller as security for the payment of the debt, the security is, in this country, very generally regarded as possessing all the essential features of a mortgage, and the vendor as standing for all practical purposes as mortgagee in relation to the vendee." Ferguson v. Blood, 9 Cir., 1907, 152 F. 98, 103.

California Civil Code, Sec. 1662, the uniform Vendor and Purchasers Risk Act, puts the risk of loss on the purchaser if either the title or the possession has been transferred. (Paragraph 16 of the contract (22) puts the risk of loss on Union) Reid v. Reid, 26 Cal.App.2d 362, 79 P.2d 451 demonstrates various aspects of the principle that the purchaser is to be treated as the equitable owner and the vendor as holding the bare legal title merely as security for the purchase price.

4. District Court's Opinion, supra, 128 F. Supp. at pages 714–715.

ant's damages on each of the aforesaid scores and directed Union to pay the same. The balance of the purchase price, plus interest and damages as ordered have been paid or tendered by Union, in accordance with the District Court's interlocutory decree and subsequent orders thereon. The Court's findings of amounts of interest, costs and expenses and attorney's fees are supported by the record and are just.

### Appellant's Specification of Errors

1. The District Court erred in allowing Union (a wilfully defaulting vendee) to complete the contract and obtain title to the land on the alleged ground that such is contra to California Civil Code, Sec. 3275.[5]

2. The District Court erred in concluding that justice and equity required that Union be allowed to complete the contract since under California Civil Code, Sec. 3369 [6] the only equitable relief available to Union from the assumed but not conceded forfeiture and penalty in this case, is restitution of the amount paid by Union in excess of the damages sustained by Ward, and, further, that Union's defaults and conduct under the contract amounted to unclean hands.

3. That the District Court erred in finding and concluding that a forfeiture and penalty would result from a termination of the contract by Ward; in its failure to make a finding as to whether the amounts paid by Union exceeded the damage sustained by Ward and the reasonable value of the use of the property by Union during the 8 years of possession of the property.

### California Code Sections

The following three California Civil Code sections are pertinent and warrant analysis:

"§ 1492. Compensation after delay in performance. Where delay in performance is capable of exact and entire compensation, and time *has not been* [emphasis supplied] expressly declared to be of the essence of the obligation, an offer of performance, accompanied with an offer of such compensation, may be made at any time after it is due, but without prejudice to any rights acquired by the creditor, or by any other person, in the meantime." Sections 3275 and 3369, supra.

It is manifest that Union can have no relief under Section 1492. The District Court found from the evidence that Union failed to qualify for relief under Section 3275 because "his default was wilful" within the meaning of the Section. This finding is fully supported by the record and the decision in Barkis v. Scott, 1949, 34 Cal.2d 116, 208 P.2d 367, at page 368.

Some two years after the Barkis decision the California Supreme Court, in Freedman v. Rector, 1951, 37 Cal.2d 16, 230 P.2d 629, at page 632, 31 A.L.R.2d 1, held that Section 3369 ("Neither specific *nor preventive relief* [emphasis supplied] can be granted to enforce a penalty or forfeiture in any case")

"precludes the court from quieting the vendor's title unless he refunds the excess of the part payments over the damage caused by the vendee's breach,"

even though the vendee's breach was a wilful default.

The court further held that in line with the finding of wilful default, the Section 3275, aforesaid, was not exclusive but merely permissive, in view of an alternate basis for the relief of a wilful defaulting vendee under Section 3369.

---

5. "§ 3275. Relief in case of forfeiture. Whenever, by the terms of an obligation, a party thereto incurs a forfeiture, or a loss in the nature of a forfeiture, by reason of his failure to comply with its provisions, he may be relieved therefrom, upon making full compensation to the other party, except in case of a grossly neg-ligent, willful, or fraudulent breach of duty."

6. "§ 3369. * * * 1. Neither specific nor preventive relief can be granted to enforce a penalty or forfeiture in any case * * *".

It is to be noted that in the Freedman case the plaintiff, defaulting vendee, sought specific performance of the contract, however, the Court allowed restitution rather than specific performance. The factual situation of the Freedman case is entirely dissimilar and distinguishable from the instant case in that in the Freedman case the trial court had found that the vendee had, in addition to his wilful default, released his claim of possession of the real property involved, rescinded the contract and before any attempt by the vendee to revoke his rescission the vendor had sold the property to an innocent purchaser. It is manifest that specific performance could not have been effectually decreed, nevertheless equity denied preventive relief and granted affirmative relief to the wilful defaulting vendee by way of restitution.

### Full Meaning of Freedman Case

The remaining query under the California law is whether the Freedman rule is broad enough to permit relief in the form of an opportunity to complete the contract upon compensating Ward for their damage.

It is apparent that Ward, under their assignments of error herein, urge to this Court, as they did in the District Court, that a vendee in wilful default should not be relieved from a forfeiture by permitting him to complete performance under the contract because he would then be receiving the benefit of his bargain.

This contention is adverse to the very teaching of the doctrine of the Freedman case because there the parties to the contract were made whole by measuring compensatory damages against forfeiture and allowing a restitution. Surely the ultimate aim in these proceedings in equity must be to save the respective parties harmless from loss or damage and, if just and equitable, place them in the status quo of their contract so as to permit them as vendor and vendee to each have the benefit of their respective bargains voluntarily entered into. The respective benefits of the bargain of the contract to the parties thereto is not to be measured in the light or economics of subsequent events, but as of the day of the contract.

■ The relief sought by Ward in the District Court was nothing short of a strict cancellation and forfeiture of the contract and Union's equity in the real property thereon. There is no equitable principle which is more firmly established in American jurisprudence than the premise that where a vendee has paid a considerable portion of the purchase price or if the property has largely enhanced in value by reason of permanent improvements, or otherwise, or if for any other reason it would be inequitable to grant a cancellation of the contract, or refuse a defaulting vendee reasonable opportunity to cure his defaults, it is within the inherent power of a court of chancery, independent of statute, to decree that the property be sold by judicial sale with the view that the purchase price, expense of litigation and sale shall first be paid, with the balance over, if any, to the vendee, thus preserving, so far as is practicable, the respective equities of the vendor and the vendee.[7]

■ It is to be noted that in the instant case the District Court did, in effect, grant strict foreclosure of the contract in favor of Ward, with an oppor-

7. Peterson v. Ridenour, 135 Cal.App.2d 720, 287 P.2d 848, decided in September, 1955 (after the decree below). The vendor sought to quiet title to residence property being sold under an instalment contract. The contract contained the usual provision making time of the essence and stating that on default the purchaser should forfeit all right to the property and to all money paid under the contract as liquidated damages. Defaults occurred, and the trial court quieted title in the vendor. The judgment was reversed with directions to give the purchaser an opportunity to cure his defaults.

In its opinion the Court went out of its way to show that the relief to which the purchaser was entitled—opportunity to cure his defaults, was not dependent upon the line of cases beginning with Barkis v. Scott (under Sec. 3275, supra)

tunity on the part of Union to cure its defaults and to meet the conditions of such strict foreclosure. These conditions were subsequently met by Union. The Court might have well ordered a judicial sale upon foreclosure and further protected Union's equity with right of redemption.

### Conclusion

It is to be noted the specific inquiry presented has not been precisely determined for us by the highest Court of California. However, the District Court was of the opinion that its view under its interlocutory decree would be so held if the Supreme Court of California was called upon to resolve the facts of the case.[8]

We feel that the California Supreme Court's decisions discussed above project and prophesy such an assumption of the District Court and point to the view adopted by it.

We conclude that the interlocutory decree and subsequent orders and final decree of the District Court were aimed at preventing the enforcement of a penalty or forfeiture as provided for in Section 3369, supra, and constituted a just and equitable disposition of the cause for the ultimate appropriate protection of the respective equities of Union, as vendee, and Ward, as vendor, in and to the real property involved.

Judgment affirmed.

and said in 135 Cal.App.2d at page 726, 287 P.2d at page 851:

"It appears that they have had possession of the premises ever since the deal was made in 1948; the rental value is not shown; what the fair value of the property was at time of breach of contract was not proved. Matters such as these are essential to determination of whether there would be unjust enrichment resulting from a judgment quieting title."

The Court went on, however, to hold that these matters were not essential when the purchaser seeks the opportunity to pay the amounts then due, and in such circumstances the claim "does not properly rest upon the Barkis line of cases." The Court said, 135 Cal.App.2d at page 728, 287 P.2d at page 852:

"The averment of an offer to pay any arrearages found to exist invoked another line of applicable cases, having to do with termination of a vendee's rights at the suit of the vendor. A quiet title action brought to terminate a contract for sale of realty is essentially a strict foreclosure. (Warner Bros. Co. v. Freud, 138 Cal. 651, 654, 72 P. 345; 27 Cal.L.Rev. p. 584, note 6). And in 'such case the court finds the amount unpaid, and decrees that it be paid on or before a day stated, and upon failure to make the payment, that defendant's equity be foreclosed' Warner Bros. 138

Cal. at page 654, 72 P. at page 346, this because it is 'in consonance with equity'. [Citing cases.]"

It will be noted that the purchaser in Peterson v. Ridenour was held entitled to reinstate the contract by paying the amount then due; there was no acceleration of future payments.

The relief granted depended not on Civil Code, Sec. 3275 or Barkis v. Scott.

Weil v. Barthel, Cal., 279 P.2d 544, subsequent opinion on rehearing, 45 Cal.2d 835, 291 P.2d 30, emphasizes the similarity which exists between a transaction in which the vendor retains legal title as security and the ordinary mortgage, and contrasts the remedy of strict foreclosure, characterized by a period fixed by the Court in which the defaulting vendee may pay the amounts due and preserve his rights under the contract, with the remedy of foreclosure by sale. The opinion approves the exercise of discretion by the trial court in ordering a sale to preserve the rights of both the vendor and vendee. Although on rehearing the opinion was vacated on other grounds the case is a useful guide to us.

8. Federal Courts in diversity cases are "'called upon to determine as best we may what the highest court of California would hold if confronted with the controversy now presented to us.'" Compania Engraw, etc. v. Schenley, 9 Cir., 181 F.2d 876, 879.