[Civ. No. 9200.   Third Dist.   Feb. 13, 1958.]

JOSE M. LUCIENTES, JR., Appellant, v. IRVING H. BLISS et al., Respondents.

Spurr & Brunner for Appellant.

Hotle & McConnell for Respondents.

SCHOTTKY, J.—Some time prior to November, 1954, defendants Bliss listed for sale certain real property known as the Bliss Ranch, situated in Mendocino County, California, with William L. Auld, a real estate agent, for the listed price of $38,000.

On January 21, 1955, plaintiff and defendants signed a document entitled Deposit Receipt, with Auld as the agent signing the same, whereby plaintiff paid an additional $1,000, thereby increasing the deposits to $1,800 on account of a purchase price of $32,500, and agreed to pay the balance of the purchase price, or $30,700, into the Mendocino County Title Company by March 21, 1955. This agreement also contained the following clause:

"Time is the essence of this contract, but the time for any act required hereunder may for sufficient cause be extended not longer than thirty days by the agent signing this contract."

On April 21, 1955, the entire balance of the purchase price of $30,700 was delivered to the Mendocino County Title Company, together with appropriate instructions to pay the sum to Bliss.

Thereafter, Bliss refused to sign the deed to the Bliss Ranch or to complete the transaction.

Plaintiff commenced this action in which he sought specific performance, and if this could not be had, then relief from forfeiture. Following a trial the court rendered judgment that plaintiff take nothing.

Appellant attacks the following findings as not being supported by the evidence and being contrary thereto: (1) The finding that the contract consideration is not adequate and

the terms are not fair, just and adequate; (2) the finding that Lucientes did not offer to perform and pay the entire purchase price; (3) the finding that Bliss changed his position to his detriment in reliance on the failure of Lucientes to pay on March 21, 1955; and (4) the finding that the failure of Lucientes to pay the price before April 21, 1955, was the result of his negligence, wilfulness or fraudulent breach of duty, and not from his inability to obtain funds.

It is a well recognized principle of law in this state that in an action for specific performance of a contract a plaintiff must not only allege but must also prove that the contract sought to be specifically enforced is not only just and reasonable but that the consideration is adequate. (Civ. Code, § 3391.) The burden of proving this fact is upon the person seeking the remedy. Many cases supporting this rule are cited in 23 California Jurisprudence, page 438 et seq., and page 490 et seq., and in 10 California Jurisprudence, 10-Year Supplement, pages 304, 305.

We shall, therefore, first consider appellant's attack upon the finding that the contract was not fair and reasonable and that the consideration was not adequate, because if the record sustains that finding appellant could not be entitled to a decree of specific performance.

The only witness produced by appellant as to the value of the property was the real estate agent, Auld, who testified on direct examination:

"[MR. BRUNNER]: Q. I will ask you, Mr. Auld, whether the price of $30,700.00 or $32,000.00 or $32,500.00 is a reasonable price for the Bliss Ranch as of January 21, 1952? A. Yes.

"Q. And was it a reasonable price for that ranch on April 21, 1955? A. Yes."

On cross-examination he testified:

"[MR. McCONNELL]: Now in determining the value of the property of this nature, Mr. Auld, timber figures in your calculation, does it not? A. That's right.

"Q. Well, in placing this figure of $32,500.00, you were using timber as an undetermined quantity then, were you? A. I have been on the ranch and I never did see very much timber on there. It had been cut over. I never saw very much on there. I haven't been all over it, but——

"Q. You did see some timber on the ranch? A. That's right.

"Q. What kind of timber was it? A. Well, they have fir and redwood.

"Q. Have you ever been on the boundaries of the ranch?

A. That's what I say, I have never been all over it. I have been down on the south—no, west boundary, I guess.

"Q. Then in reaching your opinion of $32,500.00, you are valuing something that you have not completely examined, is that correct? A. Well, at that time, the timber wasn't worth much anyway.

"THE COURT: Answer the question. A. Yes.

. . . . . . . . . . . . .

"MR. McCONNELL: Q. How many buildings are there upon the property? A. I don't recall how many. There is a home and there is a barn and some sheds there.

"Q. How many miles of fence are there on the property? A. I wouldn't know. They are in pretty bad shape. I know they were at the time I was out there. Of course it's been fixed up since.

"MR. McCONNELL: I will ask that be stricken, your Honor, because that's a conclusion of the witness that it was in pretty bad shape.

"THE COURT: It may go out.

"MR. McCONNELL: Q. How many streams are on the property? A. I don't know.

"Q. Are there any streams on the property? A. Yes, it's the headwaters of the—I believe it's the Navarro, isn't it?

"Q. I'm sorry, I couldn't hear your answer. A. It's the headwaters of some stream. I don't recall which it is.

"Q. Well, property of that nature, when you go to determine the value, streams and waters are important, are they not? Doesn't that have a bearing on the value? A. Yes. Open land means a lot, too.

"Q. How many acres of open land are there on this property? A. I don't know for sure. I estimate about 40%.

"THE COURT: How many acres on the ranch? A. 2,170 acres, I believe it is."

On redirect examination Mr. Auld testified:

"[MR. BRUNNER]: Q. Mr. Auld, where did the value at which these properties were set up for sale, where did that value come from? A. It came from Mr. Bliss.

"Q. That's the price he asked? A. He asked $38,000 for it and he agreed to take $32,000.00 cash.

"Q. $32,000.00 on time or on payment? A. That was the listing price, $38,000.00, but he would take $32,000 cash."

Respondents argue that the testimony of Auld on cross-examination was such that the court was justified in disbeliev-

ing his testimony as to the value of the property. They assert that his knowledge of the property was shown to be sketchy, for while he knew there was some redwood and fir on the place, he had no knowledge of the quantity of timber or of the character or extent of the ranch buildings or fencing, or of the streams on the property. Appellant contends that nevertheless even if the court did not believe Mr. Auld's opinion of value there was still no evidence to support the court's finding because respondents produced no evidence of value whatever. Appellant contends further that since Bliss failed to testify contrary to Mr. Auld's valuation of the property, the presumption arises that Bliss' failure to so testify is an indication that he could only testify to his prejudice and hence preferred to remain silent and this presumption constitutes affirmative evidence supporting the testimony of Auld on this issue. Respondents in reply argue that it can be inferred from the following testimony of respondent Irving H. Bliss that he did not consider the price adequate by at least $5,000:

"Q. What did Mr. Auld tell you on that occasion? A. He had an offer to increase the price $5,000.00 if I would go ahead with the deal. I told him I wouldn't do it."

It must be said that the evidence introduced by appellant to prove that the consideration for the contract was fair and adequate was exceedingly weak and that a plaintiff having the burden of proof would not ordinarily rely upon such meager evidence to convince the trial court that the contract was fair and the consideration adequate. The trial court was not convinced for the court stated in its order for findings:

"The only evidence pertaining to the question of value came from the real estate agent who had assisted in negotiating the contract and who expressed the opinion that the price in question was reasonable. On cross-examination it was shown that his knowledge of the property was sketchy, for while he knew there was some redwood and fir timber on the place, he had no knowledge of the quantity of timber or of the character, or extent, of the ranch buildings or fencing. These are all important factors to be taken into consideration in determining the value of the kind of land here involved.

"It is well established that a trial court is not bound to accept evidence at face value even though it be uncontradicted. (*Norgard* v. *Estate of Norgard,* 54 Cal.App.2d [82] 89 [128 P.2d 566] ; *Podesta* v. *Mehrten,* 57 Cal.App.2d [66] 72 [134 P.2d 38] ; *Jones* v. *Independent Title Co.,* 23 Cal.2d 859 [147 P.2d 542].) Under this rule the Court determines that this

particular evidence is insufficient to establish value and declines to accept it.

"The plaintiff, having failed to prove the adequacy of the consideration, the relief sought by him is denied, . . ."

As this court said in *Norgard* v. *Estate of Norgard*, 54 Cal.App.2d 82, at page 89 [128 P.2d 566]:

"The trial court is the sole judge of the weight and effect of testimony and of the credibility of witnesses, and is free to disbelieve them, even though they are uncontradicted, if there is any rational ground for doing so. (*Davis* v. *Judson*, 159 Cal. 121 [113 P. 147].) As was said by our Supreme Court in the very recent case of *Blank* v. *Coffin*, 20 Cal.2d 457, 461 [126 P.2d 868]:

" 'There are many reasons why a jury may refuse to believe a witness. Section 1847 of the Code of Civil Procedure provides: "A witness is presumed to speak the truth. This presumption, however, may be repelled by the manner in which he testifies, by the character of his testimony, or by evidence affecting his character for truth, honesty, or integrity, or his motives, or by contradictory evidence; and the jury are the exclusive judges of his credibility." ' "

And as was said in the leading case of *Davis* v. *Judson*, 159 Cal. 121, at page 128 [113 P. 147]:

"While it is the general rule that the uncontradicted testimony of a witness to a particular fact may not be disregarded, but should be accepted by the court as proof of the fact, this rule has its exceptions. The most positive testimony of a witness may be contradicted by inherent improbabilities as to its accuracy contained in the witness's own statement of the transaction; or there may be circumstances in evidence in connection with the matter, which satisfy the court of its falsity; the manner of the witness in testifying may impress the court with a doubt as to the accuracy of his statement and influence it to disregard his positive testimony as to a particular fact; and as it is within the province of the trial court to determine what credit and weight shall be given to the testimony of any witness, this court cannot control its finding or conclusion denying the testimony credence, unless it appears that there are no matters or circumstances which at all impair its accuracy."

While the evidence would appear to preponderate in favor of a finding that the contract was fair and the consideration adequate we cannot say upon the record in the instant case that the finding of the court to the contrary is without support.

The trial court was not bound to believe the testimony of Auld that $32,500 was the fair market value of the property, and we cannot say that the grounds stated by the court were not rational grounds for disbelieving the witness.

We conclude that the record supports the trial court's conclusion that appellant failed to sustain the burden of ·proof that section 3391 of the Civil Code imposed upon him to prove that the transaction was fair and the consideration adequate, and that therefore appellant was not entitled to specific performance of the agreement.

In addition to his prayer for specific performance appellant prayed for relief ''from forfeiture of the moneys paid by him to Defendants under and pursuant to said contracts, in the amount of $1800.00.''

█ In *Barkis* v. *Scott*, 34 Cal.2d 116, the court said, at page 118 [208 P.2d 367] :

''Section 3275 provides: 'Whenever, by the terms of an obligation, a party thereto incurs a forfeiture, or a loss in the nature of a forfeiture, by reason of his failure to comply with its provisions, he may be relieved therefrom, upon making full compensation to the other party, except in a case of a grossly negligent, willful, or fraudulent breach of duty.' Although by its terms this section authorizes relief in this case, plaintiff contends that it is the settled law of this state that such relief is unavailable to a defaulting vendee under a contract where time had been made of the essence.

''The decisions that have considered section 3275, however, have been careful to point out in granting or denying relief that the party in default has or has not brought himself within the terms of the statute, and whenever its conditions have been satisfied relief has been granted whether or not time has been made of the essence by the contract involved. [Citing numerous cases.] ''

█ The court said further, at page 122:

''On the other hand, when the default has not been serious and the vendee is willing and able to continue with his performance of the contract, the vendor suffers no damage by allowing the vendee to do so. In this situation, if there has been substantial part performance or if the vendee has made substantial improvements in reliance on his contract, permitting the vendor to terminate the vendee's rights under the contract and keep the installments that have been paid can result only in the harshest sort of forfeitures. Accordingly, relief will be granted whether or not time has been made of the essence.''

And as this court said in *Crofoot* v. *Weger*, 109 Cal. App.2d 839, at page 842 [241 P.2d 1017]:

". . . As said by the court in *Barkis* v. *Scott, supra* [34 Cal.2d 116], 'Section 3275 presupposes that the party seeking relief is in default. . . .' Likewise the trial court could have found that the loss suffered by the appellants when the respondents terminated the contract was a forfeiture or a loss in the nature of a forfeiture, and such findings, coupled with findings that the breach was neither wilful nor the product of gross negligence would have made proper a reinstatement of the contract upon equitable conditions, if that were still possible, and if not then the recovery by the appellants of such amounts of the payments made as lay within the area of forfeiture.

"In addition to the foregoing, if the court had found that the breach was wilful or grossly negligent so as to prevent equitable relief under section 3275 of the Civil Code there was still the duty of the court to go further and find whether or not the termination of the contract by the respondents for the appellants' default resulted in the unjust enrichment of the respondents. If such were the result then it would have been the duty of the court to give judgment for so much of the funds paid in as constituted unjust enrichment. (*Freedman* v. *Rector, W. & V. of St. Matthias Parish, supra* [37 Cal.2d 16 (230 P.2d 629)].) . . . It is apparent that a situation was portrayed by the evidence which would have justified findings of unjust enrichment if relief could not be given through reinstatement of the contract, and it was therefore the duty of the court to proceed and find upon these matters and if it found unjust enrichment had resulted to give judgment for the amount thereof."

In *Baffa* v. *Johnson*, 35 Cal.2d 36, the court said, at page 38 [216 P.2d 13]:

"It is now settled, however, that the defaulting vendee may recover part payments after further performance under the contract has terminated, if he proves facts justifying relief under Civil Code, section 3275. (*Barkis* v. *Scott*, 34 Cal.2d 116 [208 P.2d 367].)"

While the court in the instant case found that the failure of appellant to pay the price before April 21, 1955, was the result of his negligence, wilfulness or fraudulent breach of duty and not from his inability to pay, there is no support in the record for such a finding, and respondents do not contend that there is support for such a finding. Indeed, respondents

virtually concede that the doctrine of unjust enrichment is applicable for they state in their brief:

"The second question raised in the Crofoot case (2) recovery of unjust enrichment if any, under the doctrine of *Freedman* v. *Rector*, 37 Cal.2d 16 [230 P.2d 629], has consistently been suggested by defendants as the proper solution for this type of case. In arguing both demurrers to the complaint, and a motion for judgment on the pleadings at the commencement of the trial, our position has been and still is that all we want is our actual damages which for the most part consist of the amount we would be obligated to pay the real estate broker under the contract he negotiated. This we believe to be the sum of $900.00. Plaintiff, however, persists in seeking specific performance and only specific performance. If a proper solution to this case in the eyes of the court would be finding on these issues the defendants have no objections to having the case remitted to the trial court to make findings and enter judgment on this issue or to having this court make such findings."

We are convinced that the instant case is one in which appellant, although not entitled to specific performance, is entitled to relief from forfeiture under Civil Code, section 3275, and the decisions hereinbefore cited. When the trial court reached the conclusion that appellant was not entitled to specific performance because the contract was not fair and reasonable and the consideration was not adequate, it was the duty of the court to determine if the retention of the $1,800 paid by appellant resulted in the unjust enrichment of respondents, and, if so, to give judgment for so much of the $1,800 as constituted unjust enrichment. Our conclusion in this regard makes it unnecessary to discuss the other points raised in the briefs.

The judgment is reversed insofar as it fails to determine the issues of forfeiture, unjust enrichment and relief therefrom, if they occurred, with directions to the trial court to proceed in accordance herewith, either upon the evidence taken or such additional evidence as the parties with the permission of the court may see fit to offer. Respondents to recover their costs on appeal.

Van Dyke, P. J., and Peek, J., concurred.

. A petition for a rehearing was denied March 13, 1958, and appellant's petition for a hearing by the Supreme Court was denied April 15, 1958.