[S.F. No. 24673. Oct. 21, 1985.]

RICHARD J. PETERSEN et al., Plaintiffs and Appellants, v.
DOROTHY E. HARTELL, as Administratrix, etc.,
Defendant and Respondent.

Counsel

James L. Larson for Plaintiffs and Appellants.

John R. Hetland as Amicus Curiae on behalf of Plaintiffs and Appellants.

Anthony E. Graham for Defendant and Respondent.

Opinion

**REYNOSO, J.**—This appeal by plaintiff vendees who wilfully defaulted in making payments under an installment land sale contract requires us to reconsider such vendees' right to completion of performance. Though we upheld specific performance in *MacFadden* v. *Walker* (1971) 5 Cal.3d 809

[97 Cal.Rptr. 537, 488 P.2d 1353, 55 A.L.R.3d 1], the trial court below concluded that the granting of such relief is only discretionary and dependent upon a weighing of the equities. Accordingly, it denied specific performance, adjudged that plaintiffs had no interest in the property, and awarded plaintiffs only restitution of the installments they had paid, with interest.

As will be explained, we conclude that where the seller of land retains title only as security for amounts payable under an installment sale contract, a vendee who wilfully defaults in one or more payments after having paid a substantial part of the purchase price nonetheless retains an absolute right to redeem the property by paying the entire balance of the price and any other amounts due. If the seller seeks to quiet title on account of the default, the right of redemption may be exercised before judgment or within a reasonable time thereafter set by the court. If the contract on its face "does not require conveyance of title within one year from the date of formation of the contract" (Civ. Code, § 2985), the right may be exercised as soon as the seller gives notice of election to terminate the contract on account of the default. Since it appears from the record that plaintiffs have such a right of redemption and have exercised it by timely tender of the entire balance due, the judgment must be reversed.[1]

I

Defendant is administratrix of the estate of Juanita Gaspar who, upon the death of her first husband in 1946, succeeded to sole ownership of a 160-acre tract of unimproved land southeast of Fort Bragg in Mendocino County. In the late 1960's she entered into agreements with three of her grandchildren to sell small portions of the land at $1,500 per acre, with no down payment and monthly installments of $50 or less. The agreement now relied

---

[1]The Chief Justice urges us to extend wilfully defaulting vendees' rights beyond those articulated in this opinion by reaching issues not presented by this case. Thus, she would give an absolute right of redemption to wilfully defaulting vendees who have not yet paid a substantial part of the purchase price. She further advocates that the land installment sale contract be treated as the equivalent of a mortgage under section 2924 (though conceding that section does not "literally" apply), thus limiting the seller's remedy against a wilfully defaulting vendee to foreclosure by judicial sale, or by private sale if there is a power of sale in the contract, all subject to the wilfully defaulting vendee's right to reinstate the contract by paying only the delinquent amounts plus costs and attorney's fees. None of these far-reaching changes in the law are sought by the present plaintiffs, who have already paid a substantial part of the price and who now tender the entire balance due under the contract.

This court has twice declined similar invitations to consider such innovations in the law on the ground that considering them was unnecessary to proper disposition of the cases then before us. (*MacFadden* v. *Walker, supra,* 5 Cal.3d 809, 816; *Honey* v. *Henry's Franchise Leasing Corp.* (1966) 64 Cal.2d 801, 804-805 [52 Cal.Rptr. 18, 415 P.2d 833].) We again conclude that sound development of the law in this complex area can best be assured by limiting our holdings to the issues necessarily presented for decision.

on by plaintiffs was embodied in a written contract, executed in November 1967, providing for the sale to granddaughter Kathy Petersen and her husband, Richard Petersen, of slightly more than six acres for a total purchase price of $9,162, payable at $50 per month. The buyers were given the right to pay the entire balance of the purchase price at any time. There was no provision making time of the essence or specifying remedies in the event of default.

Although the contract was drafted by Richard Petersen, who was then a recent law school graduate, the trial court found that no undue influence or overreaching was employed by either of the Petersens in the preparation or execution of the agreement. The price of $1,500 per acre was set by Mrs. Gaspar, who wished to give her grandchildren the opportunity to acquire small portions of her property. She was dependent, however, on income from the land contract payments, along with her social security benefits, to make ends meet.

The Petersens missed occasional payments in 1968, 1969, 1971, and 1972. Of the 65 payments due from November 1967 through March 1973, they made 58 payments totaling $2,900. In April 1973 the couple separated and their payments ceased. Kathy Petersen testified that about that time she spoke about the separation to her grandmother, who said it was important to take care of the children first and that she (the grandmother) would "get by."

In September 1975 Kathy Petersen sent Mrs. Gaspar a check for $250 as "back payments." Mrs. Gaspar's attorney then wrote the Petersens, stating that Mrs. Gaspar elected to terminate the contract. In February 1976 Mrs. Gaspar wrote to Kathy Petersen, returning the latter's check and explaining that she considered the contract broken. In September 1976 Richard Petersen wrote to the attorney requesting reinstatement of the contract and a statement of the amounts due, and enclosing a $250 money order, which the attorney promptly returned on instructions from Mrs. Gaspar.

In October 1976, Mrs. Gaspar died. Kathy Petersen then assigned all her interest under the contract to Carol Ranta as trustee for the two minor children of the Petersen marriage. Thus, the plaintiffs in the present action are Richard Petersen and the two children, who appear through Ranta as their guardian ad litem. By their amended complaint against Mrs. Gaspar's administratrix, plaintiffs seek specific performance, declaratory relief, damages, and the quieting of title to an easement of necessity to connect the property with a public road. They further tender the entire balance due under the contract on condition that defendant deliver a good and sufficient deed.

After a nonjury trial, the trial court denied plaintiffs' prayer for specific performance. It concluded that (1) plaintiffs' breach of the contract was grossly negligent and wilful, (2) plaintiffs failed to tender full performance until April 1, 1977, when the action was commenced, (3) defendant is entitled to restitution of the property, and (4) plaintiffs are entitled to restitution of $2,900 plus interest from April 1, 1977. Judgment was entered accordingly with costs to defendant.

## II

In *MacFadden* v. *Walker, supra,* 5 Cal.3d 809, this court affirmed a judgment for specific performance in favor of a vendee whose default in monthly payments we found wilful as a matter of law. The trial court had found the default to be neither wilful nor grossly negligent and so had granted relief under Civil Code section 3275, which provides that a party may be relieved from a forfeiture incurred for nonperformance of a contractual obligation "upon making full compensation to the other party, except in case of a grossly negligent, willful, or fraudulent breach of duty." That section was the basis for the prior holding in *Barkis* v. *Scott* (1949) 34 Cal.2d 116 [208 P.2d 367], that a vendee who had made substantial payments and improvements on the property and then as a result of simple negligence defaulted in two payments was entitled to have the contract reinstated. In *MacFadden,* however, this court concluded that relief under section 3275, as construed in *Barkis,* was not available because the trial court's finding that the vendee's default had been nonwilful was not supported by evidence. The issue on appeal, therefore, was "whether a vendee who would otherwise be entitled to specific performance of an installment land sale contract in which time is declared to be of the essence forfeits the right to that remedy because of her wilful failure to make installment payments when due after there has been substantial part performance of the contract." (5 Cal.3d at p. 811.)

To resolve that issue, *MacFadden* turned to *Freedman* v. *The Rector* (1951) 37 Cal.2d 16 [230 P.2d 629, 31 A.L.R.2d 1], explaining that there, "we held that section 3275 is not the exclusive source of the right to relief from forfeiture. We concluded that the prohibition of punitive damages for breach of contract (Civ. Code, § 3294), the strict limitations on the right to provide for liquidated damages (Civ. Code, §§ 1670, 1671), and the provision that 'Neither specific nor preventive relief can be granted to enforce a penalty or forfeiture in any case . . .' (Civ. Code, § 3369) together established a policy that precludes any forfeiture having no reasonable relation to the damage caused by the vendee's breach even when that breach is wilful. (See also *Baffa* v. *Johnson* (1950) 35 Cal.2d 36, 37-39 [216 P.2d 13].) Since in the *Freedman* case, however, the vendor had sold the property

to a third party in reliance on the vendee's repudiation of the contract, specific performance was not an available remedy, and relief from forfeiture was necessarily limited to awarding the defaulting vendee restitution in the amount of the excess of his part payment over the damages caused by his breach. [¶] We believe that the anti-forfeiture policy recognized in the *Freedman* case also justifies awarding even wilfully defaulting vendees specific performance in proper cases. (Accord: *Ward* v. *Union Bond & Trust Company* (9th Cir. 1957) 243 F.2d 476, 480-481; see Hetland, Cal. Real Estate Secured Transactions (1970) § 3.60, pp. 105-106.) As we pointed out in the *Barkis* case, allowing the defaulting vendee to cure his default and perform the contract may often be the fairest solution, for the unjust enrichment of the vendor that is precluded by restitution of the excess of part payments over the damages caused by the breach may bear little or no relation to the forfeiture imposed on the vendee if his right to perform the contract is terminated." (5 Cal.3d at pp. 813-814.)

Having established the propriety of "awarding even wilfully defaulting vendees specific performance in proper cases" (*id.*, at p. 814) the *Mac-Fadden* opinion explained why specific performance had properly been granted to the vendee before it. "[W]e are here dealing with an equitable remedy that is carefully hedged around with protections to the person against whom it is invoked. The contract must be just and reasonable, and the consideration adequate (Civ. Code, § 3391),[2] the vendor must be assured that he too will receive the benefit of his bargain (Civ. Code, § 3386),[3] and the defenses of laches and unclean hands are available to

---

[2]All section references are to the Civil Code unless otherwise indicated. Section 3391 provides: "*What parties cannot be compelled to perform.* Specific performance cannot be enforced against a party to a contract in any of the following cases:

"1. If he has not received an adequate consideration for the contract;

"2. If it is not, as to him, just and reasonable;

"3. If his assent was obtained by the misrepresentation, concealment, circumvention, or unfair practices of any party to whom performance would become due under the contract, or by any promise of such party which had not been substantially fulfilled; or,

"4. If his assent was given under the influence of mistake, misapprehension, or surprise, except that where the contract provides for compensation in case of mistake, a mistake within the scope of such provision may be compensated for, and the contract specifically enforced in other respects, if proper to be so enforced."

[3]Section 3386 provides: "Notwithstanding that the agreed counterperformance is not or would not have been specifically enforceable, specific performance may be compelled if:

"(a) Specific performance would otherwise be an appropriate remedy; and

"(b) The agreed counterperformance has been substantially performed or its concurrent or future performance is assured or, if the court deems necessary, can be secured to the satisfaction of the court.

See also section 3392, which provides: "What parties cannot have specific performance in their favor. Specific performance cannot be enforced in favor of a party who has not fully and fairly performed all the conditions precedent on his part to the obligation of the other party, except where his failure to perform is only partial, and either entirely immaterial, or capable of being fully compensated, in which case specific performance may be compelled, upon full compensation being made for the default."

preclude a defaulting vendee from seeking an unfair advantage over an innocent vendor. In the present case, however, we find no basis for upsetting the trial court's judgment awarding specific performance. The contract was just and reasonable and the consideration was adequate. MacFadden is assured and will receive the full benefit of his bargain. Mrs. Walker had paid over half the price before she defaulted, and the value of the land adequately secured her obligation to pay the remainder. Although she failed to prove that her default was not wilful, it appears at worst to have been the petulant reaction of an elderly lady to an apparent theft of timber from her property. It is true that the default lasted for over two years, but such delay may be considered as much the responsibility of MacFadden as Mrs. Walker. A vendor can always bring an appropriate action immediately after the default if he deems it desirable to get, promptly, either his property back or the balance of the contract price." (5 Cal.3d at p. 815.)

Unlike the trial court in *MacFadden,* the trial court below denied plaintiff vendees specific performance. Since that remedy is discretionary (*Pasqualetti* v. *Galbraith* (1962) 200 Cal.App.2d 378, 382 [19 Cal.Rptr. 323]; *Lind* v. *Baker* (1941) 48 Cal.App.2d 234, 245 [119 P.2d 806]), we must consider whether the denial was an abuse of discretion and, if not, whether plaintiffs are entitled to relief on some other ground.

◼ To be entitled to specific performance of a contract, a plaintiff must plead and prove that the contract is just and reasonable and the consideration adequate, as required by section 3391 (fn. 2, *ante*). (*Lucientes* v. *Bliss* (1958) 157 Cal.App.2d 565, 568 [321 P.2d 526].) Yet here, the trial court's findings of fact and conclusions of law fail to decide those issues even though they were properly raised in the complaint. There are indications in the findings and the trial court's memorandum of intended decision, however, that had the court reached those issues, it would have resolved them in plaintiffs' favor. The court did find that "[n]either Richard nor Kathy Petersen employed any undue influence, overreaching, or unfairness in the preparation or execution of the agreement" and deleted a proposed finding that the plaintiffs were guilty of unclean hands. The court also found that the decedent seller was motivated by a desire to give her grandchildren the opportunity to acquire small portions of her property. In its memorandum, the court observed that the decedent essentially set the contract's terms, including the price, and had become "knowledgeable about the perils of selling property" through selling off portions of her acreage in earlier years without the services of lawyers, real estate agents, or title companies. We note that adequacy of consideration is tested as of the time the contract is formed and that its determination should take into account not only the value of the property being sold but also the relationship between the parties and the object to be obtained by the contract. (*Meyer* v. *Benko* (1976) 55

Cal.App.3d 937, 945 [127 Cal.Rptr. 846]; *Henderson* v. *Fisher* (1965) 236 Cal.App.2d 468, 474 [46 Cal.Rptr. 173].) Accordingly, we infer that the trial court omitted any determination that the contract was just and reasonable and the consideration adequate not because of any lack of support for those conclusions in the record but because, in the court's view, those determinations would not have altered the court's ultimate conclusion that specific performance should be denied.

The memorandum of intended decision recites seven factual differences between the present case and *MacFadden* v. *Walker, supra,* 5 Cal.3d 809. One of the stated differences is that the vendee in *MacFadden* had taken possession of and made improvements on the property. Another is that the *MacFadden* vendee had paid a larger proportion of the purchase price. We consider both of those differences immaterial. Here the land was unimproved and unoccupied, and the contract was silent on the right to possession. Under those circumstances, the Petersens' payment of $2,900 out of a purchase price of $9,162 constituted sufficient part performance to qualify them for equitable relief regardless of possession. (*Barkis* v. *Scott* (1949) 34 Cal.2d 116, 122 [208 P.2d 367].)

The other five distinctions from *MacFadden* listed by the trial court deal with differences in the nature and extent of, and the circumstances surrounding, the defaults of the *MacFadden* vendee as contrasted with those of the Petersens as described in the findings. The materiality of those differences in the eyes of the trial court is not made explicit. It may be thought to relate to the court's express conclusion that the decedent seller "had no assurance that she would receive the benefit of the bargain." (See §§ 3386, 3392, set out at fn. 3, *ante.*) The Petersens' conduct in connection with defaults might well have a bearing on the seller's assurance of future performance if plaintiffs were seeking *reinstatement* of the contract, tendering only delinquent payments rather than the full balance of the purchase price. But where, as here, the relief sought is contingent upon plaintiffs' paying all amounts due or to become due under the contract, the judgment granting that relief will make the seller whole. (See § 3302 (detriment for breach of obligation to pay money is the amount due with interest thereon).)

The more likely connection between the findings of the Petersens' derelictions as to payments and the denial of specific performance is that the trial court weighed the seriousness of plaintiffs' defaults against them in a balancing of equities. That that was the court's theory seems likely from its citation of *Kosloff* v. *Castle* (1981) 115 Cal.App.3d 369 [171 Cal.Rptr. 308], where the Court of Appeal declared that whereas the wilfully defaulting vendee's right to restitution of installment payments made in excess of the seller's damages is unqualified, such vendee's right to specific perform-

ance is discretionary and dependent on a balancing of equities that include the seriousness of the vendee's defaults. (*Id.*, at p. 376. Accord, *Bartley* v. *Karas* (1983) 150 Cal.App.3d 336, 344-345 [197 Cal.Rptr. 749].)

If that theory were correct, there would be ample basis in the evidence and findings to support the denial of specific performance. The Petersens' monthly payments were erratic and delinquent almost from the beginning even though the seller made clear her need of the payments for her support. By April 1973 the Petersens had made only 58 out of the 65 payments then due, and their first attempt to reinstate the contract was not until 29 months later, when they tendered only $250 out of the $1,800 that was by then overdue and unpaid.

The issue, therefore, is whether plaintiffs, despite their wilful defaults in payments, now have an absolute right to a conveyance of the property in exchange for payment of the entire balance of the purchase price (together with interest and any other damages) in light of their substantial part performance and the seller's notice of election to terminate the contract on account of such defaults.

### III

Although we treated factors mitigating the seriousness of the vendee's default as relevant in upholding the judgment of specific performance in *MacFadden* v. *Walker, supra,* 5 Cal.3d 809, 813, we took care to explain that "[s]ince we have concluded . . . that Mrs. Walker [the vendee] is entitled to the remedy of specific performance, we need not decide whether she might also be entitled to some other remedy under the law governing security transactions" (*id.*, at p. 816). ■ For at least a century in this state, a seller of land being sold under an installment contract who sues to quiet title because of the vendee's default in installment payments has been required to give the vendee a reasonable opportunity to complete performance. In *Keller* v. *Lewis* (1878) 53 Cal. 113, 118, this court explained: "It is a *universal rule* in equity never to enforce either a penalty or forfeiture. (2 Story's Eq., 1319, and cases cited.) On the contrary, equity frequently interposes to prevent the enforcement of a forfeiture at law. In the view of a Court of Equity, in cases like the present, the legal title is retained by the vendor as security for the balance of the purchase money, and if the vendor obtains his money and interest he gets all he expected when he entered into the contract. True, he is not bound to wait indefinitely after the failure of the purchaser to comply with the terms of his agreement. If the payments are not made when due, he may, if out of possession, bring his ejectment and recover the possession; but if he comes into *equity* for relief, his better remedy, in case of persistent default on the part of the vendee, is to institute

proceedings to foreclose the right of the vendee to purchase; the decree usually giving the latter a definite time within which to perform. (*Hansborough* v. *Peck,* 5 Wallace, 506.) [¶] Under the circumstances of this case, as presented by the pleadings and evidence, the decree of the District Court should have fixed a day within which the defendants should pay the balance due upon the contract, and costs, etc., or be forever foreclosed of all right or interest in the lands, or to a conveyance thereof."

In subsequent decisions this court has continued to uphold that procedure for giving the vendee an opportunity to complete performance as "in consonance with equity." (*Kornblum* v. *Arthurs* (1908) 154 Cal. 246, 249 [97 P. 420]; accord, *Cross* v. *Mayo* (1914) 167 Cal. 594, 605 [140 P. 283]; *Odd Fellows' Sav. Bank* v. *Brander* (1899) 124 Cal. 255, 257 [56 P. 1109]; *Southern Pacific R. R. Co.* v. *Allen* (1896) 112 Cal. 455, 462 [44 P. 796]; *Fairchild* v. *Mullan* (1891) 90 Cal. 190, 194 [27 P. 201].) There is no indication in those cases that the provision for a right of redemption in a decree that would otherwise foreclose the vendee's rights in the land was contingent on any showing of facts that would mitigate the wilfulness or seriousness of the vendee's default. To the contrary, in *Kornblum* v. *Arthurs, supra,* 154 Cal. 246, this court approved a provision for redemption by a vendee whose suit for rescission was held barred by laches because he had purchased the lot in question on speculation, been granted an extension of time for an additional payment, and only then, after the real estate market had partially collapsed, sought rescission.

In those early cases, however, the vendee who failed to exercise the right to redeem by completing the payments forfeited payments already made, apparently without regard to whether the amounts paid exceeded the seller's damages. (*Cross* v. *Mayo, supra,* 167 Cal. 594, 606; *Kornblum* v. *Arthurs, supra,* 154 Cal. 246; *Odd Fellows' Sav. Bank* v. *Brander, supra,* 124 Cal. 255, 257-258; *Southern Pacific R. R. Co.* v. *Allen, supra,* 112 Cal. 455, 462; see *Glock* v. *Howard & Wilson Colony Co.* (1898) 123 Cal. 1 [55 P. 713].) ██ Thereafter, this court decided that even a wilfully defaulting vendee may be entitled to restitution under section 3369, which provides that "[n]either specific nor preventive relief can be granted to enforce a penalty or forfeiture in any case." That section "precludes the court from quieting the vendor's title unless he refunds the excess of the part payments over the damage caused by the vendee's breach." (*Freedman* v. *The Rector, supra,* 37 Cal.2d 16, 22 [230 P.2d 629, 31 A.L.R.2d 1].) Such restitution is a matter of right for the wilfully defaulting vendee who proves that the payments made to the seller exceed the amount necessary to give the seller the benefit of his bargain. (*Honey* v. *Henry's Franchise Leasing Corp., supra,* 64 Cal.2d 801, 805; *Bartley* v. *Karas, supra,* 150 Cal.App.3d 336, 345, fn. 5; *Kosloff* v. *Castle, supra,* 115 Cal.App.3d 369, 376.)

While recognizing that the wilfully defaulting vendee's right to restitution is unqualified, some post-*Freedman* decisions have treated such vendee's right to a reasonable opportunity to redeem the property by paying the entire balance owed, plus damages, before title is quieted in the seller, as merely discretionary. Thus, in *Bartley* v. *Karas, supra,* 150 Cal.App.3d 336, the court interpreted the *Keller* line of cases as allowing such relief "*where the circumstances indicated* that it would be ' "in consonance with equity" ' " (*id.,* at p. 344, italics added) and as holding that the relief "*may . . .* be proper where the seller's conduct contributed to the default and where there is some good faith, but imperfect excuse, for the buyer's conduct" (*id.,* at p. 345, italics added). Other decisions similarly have weighed the seriousness of the vendee's defaults in determining the propriety of granting the relief. (*Kay* v. *Kay* (1961) 188 Cal.App.2d 214, 219-221 [10 Cal.Rptr. 196]; *Petersen* v. *Ridenour* (1955) 135 Cal.App.2d 720, 728-730 [287 P.2d 848]; cf. *Union Bond & Trust Co.* v. *Blue Creek Redwood Co.* (N.D.Cal. 1955) 128 F.Supp. 709, 713, affd. *sub nom. Ward* v. *Union Bond & Trust Co.* (9th Cir. 1957) 243 F.2d 476.)

■ We think that as a matter both of stare decisis and of sound public policy, a vendee who has made substantial payments on a land installment sale contract or substantial improvements on the property, and whose defaults, albeit wilful, consist solely of failure to pay further amounts due, has an unconditional right to a reasonable opportunity to complete the purchase by paying the entire remaining balance plus damages before the seller is allowed to quiet title. We read *Keller* and its earlier progeny as so holding. As *Keller* itself observes, "the legal title is retained by the vendor as security for the balance of the purchase money, and if the vendor obtains his money and interest he gets all he expected when he entered the contract." (53 Cal. at p. 118.) To that statement we add that the seller may be entitled to damages in addition to interest.[4] Whatever the amounts due, their payment in full makes the seller whole regardless of the nature of the vendee's defaults in payments.

■ In the present case, of course, the seller did not sue to quiet title but instead gave the vendees written notice of election to terminate the contract because of their failure to make timely payments. When plaintiffs sued for specific performance, defendant merely answered, praying that plaintiffs take nothing. Thus, the right of redemption asserted by plaintiffs

---

[4]Compare Code of Civil Procedure section 726, subdivision (a), providing for application of the proceeds of a mortgage foreclosure sale to "the payment of the costs of court, the expenses of levy and sale, and the amount due plaintiff, including, where the mortgage provides for the payment of attorney's fees, such sum for attorney's fees as the court shall find reasonable, not exceeding the amount named in the mortgage."

cannot be justified as a condition to the granting of relief sought in this action by the seller.

If Mrs. Gaspar had been entitled to foreclose the Petersens' interest in the land by a unilateral declaration of termination on account of wilful default, leaving the Petersens with only a right to monetary restitution of payments in excess of seller's damages, there would appear no basis for allowing plaintiff vendees to enforce an absolute right of redemption in an action in which defendant sought no affirmative relief. Arguably supporting the trial court's apparent conclusion that the seller had such a right of non-judicial foreclosure were (1) the absence of equities requisite to a vendee's right of specific performance under *MacFadden* and (2) facts that appear to have empowered the seller to convey to a bona fide purchaser: the contract was not recorded; the land was unoccupied; and the seller paid the property taxes.

■ ■■ ■ ■ Other circumstances, however, both factual and legal, lead us to conclude that Mrs. Gaspar had only a security interest (see Note, *Contracts: Forfeiture Clauses: Relief to Vendee in Default in California* (1952) 40 Cal.L.Rev. 593, 597), and that the vendees' right to purchase the property by completing payment of the purchase price and any other amounts due could be terminated only by a foreclosure sale[5] or by strict foreclosure, i.e., a judicial proceeding quieting the seller's title against the vendees' right of redemption. Seller's counsel acknowledged at least the possibility that such foreclosure might be necessary by (1) accompanying the formal notices of termination with requests for a quitclaim deed and (2) including in the judgment prepared for, and signed by, the trial judge, a provision that "plaintiffs have no right, title, or interest in" the property.

[5]Foreclosure by sale, long available as a remedy for vendee's breach of a land sale contract (*Longmaid* v. *Coulter* (1898) 123 Cal. 208 [55 P. 791]; *Sparks* v. *Hess* (1860) 15 Cal. 186; see *Laske* v. *Lampsona* (1948) 89 Cal.App.2d 284, 288 [200 P.2d 871]), was legislatively recognized in 1935 in the following provision of Code of Civil Procedure section 580b: "No deficiency judgment shall lie in any event after any sale of real property for failure of the purchaser to complete his contract of sale, or under a deed of trust, or mortgage, given to the vendor to secure payment of the balance of the purchase price of real property . . . ." The provision applies to land sale contracts used as a security device, as distinct from marketing contracts. (*Venable* v. *Harmon* (1965) 233 Cal.App.2d 297 [43 Cal.Rptr. 490]; see *Honey* v. *Henry's Franchise Lease Corp.*, *supra*, 64 Cal.2d 801, 804; Hetland, *The California Land Contract* (1960) 48 Cal.L.Rev. 729.) It not only prohibits deficiency judgments but also bars the seller from suing for the remaining balance without first going against the security. (*Venable* v. *Harmon*, *supra*, 233 Cal.App.2d at pp. 301-302.) We need not consider the circumstances under which foreclosure by sale is an appropriate remedy for breach of a land sale contract since none of the parties seeks such relief. (See *MacFadden* v. *Walker*, *supra*, 5 Cal.3d 809, 816; *Honey* v. *Henry's Franchise Lease Corp.*, *supra*, 64 Cal.2d 801, 804-805; Hetland, Cal. Real Estate Secured Transactions (Cont.Ed.Bar 1970) §§ 3.67-3.81, pp. 111-134; Note, *Reforming the Vendor's Remedies for Breach of Installment Land Sale Contracts* (1973) 47 So.Cal.L.Rev. 191, 198-216.)

Moreover, sections 2985 and 2985.1, enacted in 1961 and 1963, prohibit one who has contracted to sell land under a long-term installment contract from conveying title in complete disregard of the vendees' interest. Section 2985 defines a "real property sales contract" as "an agreement wherein one party agrees to convey title to real property to another party upon the satisfaction of specified conditions set forth in the contract and which does not require conveyance of title within one year from the date of formation of the contract." Section 2985.1 provides in pertinent part: "A real property sales contract may not be transferred by the fee owner of the real property unless accompanied by a transfer of the real property which is the subject of the contract, and real property may not be transferred by the fee owner thereof unless accompanied by an assignment of the contract."[6] ▮ The seller is thus prohibited from making any transfer that would sever the direct contractual relationship between the vendee and the owner of the fee. The intended protection of the vendees' interest is best served by interpreting section 2985.1 to require continuation of that linkage between seller's title and vendee's contractual interest until the latter has been affirmatively terminated by conveyance of title to the vendee, by a foreclosure sale (see fn. 4, *ante*), or by strict foreclosure.

Finally, we think that to retain specific performance under *MacFadden* v. *Walker, supra,* 5 Cal.3d 805, as the utmost remedy available in a suit initiated by a wilfully defaulting vendee unduly burdens courts and litigants with time-consuming and expensive legal proceedings. The present case is illustrative. To settle a dispute over land sold for a total price of only $9,162 required two days of nonjury trial in which eight witnesses (only two of whom were parties) testified to circumstances bearing on whether the vendees' defaults were sufficiently egregious to bar them from specific performance under *MacFadden.* Yet, as already explained, if defendant seller had sued to quiet title, plaintiffs would have been entitled as a matter of right to a conveyance of title in exchange for payment of the balance of the purchase price with interest and damages. Such redemption by plaintiff would give defendant the entire benefit bargained for, free of any dependence on further performance by plaintiff vendees. The outcome will be no less fair to both parties if, as we hold, the vendees under a real property sales contract, as defined in section 2985, are entitled to judicial enforcement of the same absolute right of redemption in response to the seller's notice of election to terminate the contract for default in payments. The complaint initiating the vendee's action for that purpose, rather than being designated as one for

---

[6]Section 2985.1 further provides that its prohibitions are inapplicable to separate assignments of the contract as security or separate conveyances of the fee title in trust. Section 2985.2 limits the total amount of encumbrances the seller can place on the property, and section 2985.3 generally requires that contract installment payments be applied first to any obligations secured by the encumbrances.

specific performance, is more appropriately referred to as one to redeem the vendee's interest in real property.

■ Accordingly, we conclude that plaintiffs are entitled to a conveyance of title to the property in exchange for payment of the entire remaining balance due under the contract together with interest and any consequential damages as determined by the court. Should plaintiffs fail to make such payments within a reasonable time fixed by the court, the adjudication that plaintiffs have no further interest in the property should become effective only upon defendant's payment of the sums due to plaintiffs as restitution. Statements in *Bartley* v. *Karas, supra,* 150 Cal.App.3d 336, and *Kosloff* v. *Castle, supra,* 115 Cal.App.3d 379, inconsistent with this conclusion are disapproved.

The judgment is reversed.

Grodin, J., Broussard, J., and Kaus, J.,* concurred.

**BIRD, C. J.,** Concurring and Dissenting.—I agree with the majority that an unconditional right of redemption exists for most wilfully defaulting vendees under security device installment land sale contracts.

However, there is no reason to deny the right of redemption to vendees whose payments prior to default amount to less than "a substantial part of the purchase price." (Maj. opn., *ante,* at p. 106.) This court has under certain circumstances treated substantial partial payment as a prerequisite to relief from forfeiture. However, the substantial partial payment requirement has been applied only where the relief granted to the defaulting vendee was not redemption but *reinstatement* of the contract upon payment of *delinquent* amounts. (See, e.g., *Barkis* v. *Scott* (1949) 34 Cal.2d 116, 118, 122 [208 P.2d 367]; see also *Cross* v. *Mayo* (1914) 167 Cal. 594, 596, 605 [140 P. 283].)

By contrast, proof of substantial partial payment has not been held to be a prerequisite to *redemption,* in which the vendee pays the full balance of the purchase price in exchange for immediate conveyance of title. (*Keller* v. *Lewis* (1878) 53 Cal. 113, 118; see also *Kornblum* v. *Arthurs* (1908) 154 Cal. 246, 249 [97 P. 420]; cf. *Odd Fellows' Sav. Bank* v. *Brander* (1899) 124 Cal. 255 [56 P. 1109] [defaulting vendee who had paid only 6 percent of purchase price held entitled to right of redemption].)

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.

The sole possible exception is *MacFadden* v. *Walker* (1971) 5 Cal.3d 809 [97 Cal.Rptr. 537, 488 P.2d 1353, 55 A.L.R.3d 1]. In *MacFadden,* this court held that a wilfully defaulting vendee who had deposited with the court the full balance of the purchase price plus interest had a right to specific performance. In other words, the vendee had a right of redemption. Like the vendee in *Barkis, supra,* 34 Cal.2d 116, the vendee in *MacFadden* had paid approximately half the purchase price before defaulting. Unlike the vendee in *Barkis,* the vendee in *MacFadden* did not seek to reinstate the schedule of installment payments, but instead offered to pay off the entire contract.

*MacFadden* quoted at length from *Barkis,* in which substantial part payment was held to be a prerequisite to reinstatement. (*MacFadden, supra,* 5 Cal.3d at p. 814.) Without discussing the differences between reinstatement and redemption, the court opined that the fact that the vendee had previously paid a substantial part of the purchase price assured that the rest of the purchase price would be paid if the vendee were granted specific performance. (*Id.,* at p. 815.)

This assurance was clearly not essential to the holding. As in this case, the vendee had deposited with the court the full balance of the purchase price with interest. (*Id.,* at p. 812.) No further assurance of payment was necessary. Thus, *MacFadden* does not stand for the proposition that substantial partial payment is a prerequisite to redemption.

A requirement of substantial partial payment is not only unnecessary as a matter of stare decisis, it is also practically unnecessary to protect the vendor's interest. As the majority acknowledge, " 'the legal title is retained by the vendor as security for the balance of the purchase money, and if the vendor obtains his money and interest he gets all he expected when he entered into the contract.' " (Maj. opn., *ante,* at p. 114, quoting *Keller* v. *Lewis, supra,* 53 Cal. at p. 118; see also maj. opn., *ante,* at p. 111.) That statement holds true whether or not a substantial part of the purchase price has previously been paid.

The majority also fail to discuss the cogent arguments raised by Professor Hetland, who appeared as amicus curiae for plaintiffs. Professor Hetland argues that the installment land sale contract, when employed as a security device, is the functional equivalent of a mortgage or deed of trust and should generally be subject to the same rules. This view has much to recommend it.

Treating the installment land sale contract as the equivalent of a mortgage under Civil Code section 2924[1] would bring the procedures for foreclosure of the vendee's equity of redemption into line with those permitted for foreclosure under a mortgage or deed of trust. (See Civ. Code, § 2924 [private foreclosure sale]; Code Civ. Proc., § 700.010 et seq. [judicial foreclosure sale].) Moreover, the vendee, like a mortgagor or trustor under a deed of trust, would not be restricted to an equity of *redemption,* i.e., the right to conveyance of title only upon payment of the *full* amount of the debt. The vendee would also be entitled to *reinstatement* of the contract upon payment of any *delinquent* amounts. (See Civ. Code, § 2924c.)[2]

---

[1]Section 2924 provides in part that "Every transfer of an interest in property, other than in trust, made only as a security for the performance of another act, is to be deemed a mortgage . . . ." In an installment land sale contract, the vendor *retains* title to the property as a means of securing the vendee's obligation to pay. Thus, the vendee makes no "transfer" of a property interest to the vendor, and the contract does not fall literally within the terms of section 2924.

However, it has long been recognized that an installment land sale contract is "an imperfect or equitable mortgage, . . . [properly] treated as if it had the similitude of a mortgage, subject to foreclosure in the same way a mortgage is foreclosed." (*Gessner* v. *Palmateer* (1891) 89 Cal. 89, 92 [26 P. 789].) This court has also held that a borrower's written promise not to transfer or encumber real property, given as security for repayment of a loan, creates an equitable mortgage (*Coast Bank* v. *Minderhout* (1964) 61 Cal.2d 311, 313-315 [38 Cal.Rptr. 505, 392 P.2d 265]), even though no transfer of an interest in real property from the borrower to the lender occurs.

Similarly, a deed conveying land and reserving to the vendor a lien to secure payment of the purchase price has been held to create an equitable mortgage. (*Dingley* v. *Bank of Ventura* (1881) 57 Cal. 467, 470-471.) As in *Coast Bank,* the transaction at issue in *Dingley* did not include a transfer of an interest in land from the vendee to the vendor. The vendor in *Dingley* argued that the creation of a mortgage required such a transfer, relying on Civil Code section 2924. (*Id.,* at p. 468.) This argument was unavailing. "A court of equity looks through the form to the substance of the matter before it, and where, as here, it finds a contract in the deed of conveyance securing to the vendor a lien on the land sold for the unpaid purchase-price, it treats it as, what it is substantially, a mortgage." (*Dingley, supra,* 57 Cal. at p. 472.)

In *Bank of Italy etc. Assn.* v. *Bentley* (1933) 217 Cal. 644 [20 P.2d 940], the trustee under a deed of trust argued that it was not required to exhaust the security before suing on the personal obligation, since the statute requiring exhaustion of the security referred only to mortgages and not to deeds of trust. (*Id.,* at p. 653.) That argument was rejected for reasons which are applicable to this case. "Fundamentally, it cannot be doubted that in both situations the security for an indebtedness is the important and essential thing in the whole transaction. The economic function of the two instruments would seem to be identical. Where there is one and the same object to be accomplished, important rights and duties of the parties should not be made to depend on the more or less accidental form of the security." (*Id.,* at pp. 657-658.)

As the authors of a leading treatise in the field have commented, "[t]he entire question of the vendor-vendee relationship would be better served if the courts would, once and for all, clearly establish that the security land sale contract shall be governed by California statutory law relating to mortgages and deeds of trust." (1 Miller & Starr, Current Law of Cal. Real Estate (rev. ed. 1975) pt. 2, § 5:31, p. 170, fn. 8.)

[2]Section 2924c, subdivision (a)(1) provides in part that "[w]henever all or a portion of the principal sum of any obligation secured by deed of trust or mortgage on real property . . . has, prior to the maturity date fixed in such obligation, become due or been declared due by reason of default in payment of interest or of any installment of principal, . . . the

It may be argued that equating installment land sale contracts with mort-gages would disappoint the expectations of vendors who relied on existing law when they elected to provide for secured financing via an installment land contract rather than a promissory note and deed of trust or mortgage. In addition to giving the vendee a right to reinstate, bringing installment land contracts within the scope of Civil Code section 2924 would deprive vendors of the power they currently enjoy to extinguish the vendee's interest in the security through an action to quiet title or by other means of strict foreclosure. Vendors would be confined to the relatively slow and cumbersome remedy of judicial foreclosure sale (Code Civ. Proc., § 726) or, if provided by contract, the more convenient remedy of a private sale under the rules governing private sales on default under a mortgage or deed of trust (Civ. Code, § 2924 et seq.).[3]

However, vendors have been on notice for nearly 15 years that this court was considering a change in the law which would "complete the land sale reform initiated by *Barkis* v. *Scott, supra,* 34 Cal.2d 116, and ending prematurely with *MacFadden* v. *Walker, supra,* 5 Cal.3d 809, by . . . holding that the land sale contract is a mortgage under Civil Code section 2924" (*Kosloff* v. *Castle* (1981) 115 Cal.App.3d 369, 377 [171 Cal.Rptr. 308]). For example, the 1973 edition of Witkin's widely consulted treatise summarizing California substantive law noted that *MacFadden* contained "[a] broad hint of a possible judicial extension to defaulting [installment land contract] purchasers of the right of a defaulting mortgagor to cure default . . . ." (3 Witkin, Summary of Cal. Law (8th ed. 1973) Security Transactions in Real Property, § 21, p. 1510.)

---

trustor or mortgagor . . . at any time within three months of the recording of the notice of default under such deed of trust or mortgage, if the power of sale therein is to be exercised, or, otherwise at any time prior to entry of the decree of foreclosure, may pay to the beneficiary or the mortgagee . . . the entire amount then due under the terms of such deed of trust or mortgage and the obligation secured thereby (including reasonable costs and expenses . . . which are actually incurred in enforcing the terms of such obligation, deed of trust or mortgage, and trustee's or attorney's fees . . .), *other than such portion of principal as would not then be due had no default occurred,* and thereby *cure* the default . . . and . . . all proceedings theretofore had or instituted shall be dismissed or discontinued and the obligation and deed of trust or mortgage shall be *reinstated* and shall be and remain in force and effect, the same as if no such acceleration had occurred." (Italics added.)

[3]As recently as 1970, private power of sale clauses were rarely included in land sale contracts. (See Hetland, Cal. Real Estate Secured Transactions (Cont.Ed.Bar 1970) § 3.80, pp. 132-134; Note, *Reforming the Vendor's Remedies for Breach of Installment Land Sale Contracts* (1973) 47 So.Cal.L.Rev. 191, 212.) If that were still the case, the burden on vendors might be substantial. However, by the end of the 1970s, "[p]ower-of-sale clauses [were] beginning to appear in installment land sale contracts, with the same formality and elaboration which accompanies their inclusion in deeds of trust and mortgages. . . ." (Bernhardt et al., Cal. Mortgage and Deed of Trust Practice (Cont.Ed.Bar 1979) § 6.5, p. 260.) The trend toward inclusion of power-of-sale clauses may have been a response to indications in this court's opinions that a judicial equation of installment land sale contracts with mortgages was on the horizon. (See *post,* pp. 120-121.)

In *MacFadden* a unanimous court took note of Professor Hetland's "persuasive arguments that installment land sale contracts should be treated as security devices substantially on a par with mortgages and deeds of trust, and that therefore 'the law governing those security devices should be adopted with appropriate modifications in determining the remedies for breaches of installment contracts.'" (*MacFadden, supra,* 5 Cal.3d 809, 816, citing *Honey* v. *Henry's Franchise Leasing Corp.* (1966) 64 Cal.2d 801, 804 [52 Cal.Rptr. 18, 415 P.2d 833]; Hetland, Cal. Real Estate Secured Transactions, *supra,* §§ 3.58-3.81, pp. 100-134.)

Specifically, the court observed that the law governing mortgages "affords even the wilfully defaulting debtor an opportunity to *cure* his default before losing his interest in the security." (*MacFadden, supra,* 5 Cal.3d at p. 816, italics added; see also *County of Los Angeles* v. *Butcher* (1957) 155 Cal.App.2d 744, 747 [318 P.2d 838] ["it is clear that where parties enter into a written contract for the purchase and sale of real property pursuant to which the . . . seller retains the legal title as security for the purchase price, the [seller] 'has no greater rights than he would possess if he had conveyed the land and taken back a mortgage'"].)

The predominant use of installment land sale contracts has been to finance the purchase of housing by low income families and individuals unable to qualify for conventional mortgage financing or government loan guarantee programs. (See Note, *Reforming the Vendor's Remedies for Breach of Installment Land Sale Contracts, supra,* 47 So.Cal.L.Rev. at pp. 193-198.)

Providing installment contract vendees the same protections that are afforded to mortgagors would eliminate some abusive practices of vendors, who have exploited the lack of legal sophistication and limited capacity to litigate of their low-income clients. (See *id.,* at pp. 197, fn. 36, 205-206, 211.) Most important, defaulting vendees would be able to avoid the loss of their homes by paying only the delinquent amounts.[4] Under the majority's holding, a wilfully defaulting vendee may avoid this fate only by paying the outstanding balance in full. This is an unjustifiably harsh burden to place on the low-income and middle-income families and individuals who will be most affected.

**MOSK, J.**—I dissent.

The majority misread precedent and rely on questionable "policy" to reach a result that flouts what is undeniably equitable. Our long history of

---

[4]Before a vendee may reinstate the contract in this manner, however, he or she must also pay the vendor's reasonable costs and the trustee's or the attorney's fees. (See Civ. Code, § 2924c, subd. (a)(1).) Thus, even if there were more than one wilful default, the vendor would be fully protected.

cases holds that when a vendee in an installment land sale contract wilfully defaults, it is in the trial court's discretion to weigh the equities and discern whether redemption is warranted. The trial court reacted properly to the overwhelming evidence and exercised its discretion to deny specific performance to vendees who have been wilfully untrustworthy and derelict in the performance of contract duties.

The majority place principal focus on a line of cases beginning with *Keller* v. *Lewis* (1878) 53 Cal. 113. There they find authority for their holding that a wilfully defaulting vendee has an unqualified right to the equity of redemption with respect to an installment land sale contract. However, a careful examination of the *Keller* line reveals that an absolute right was never contemplated. In each of the cases in the series the vendee was given a time in which to perform, but the temporal requirement was either at the behest of the vendor or was the result of the court's examination of the equities of the case.

It is true that in *Keller* we recognized the benefits of allowing a vendee to comply with the contract. But far from creating an absolute right to perform we held such relief proper *"[u]nder the circumstances of this case,* as presented by the pleadings and evidence." (*Id.*, at p. 118, italics added.) The vendees in *Keller* had bought the land on the vendor's claim that his title was perfect and their possession would be undisturbed, yet they were "annoyed by various persons claiming adversely." Therefore their default, though wilful, was excusable.

In *Kornblum* v. *Arthurs* (1908) 154 Cal. 246 [97 P. 420], the majority declare, the equities weighed against the vendee yet the court granted the vendee a right to redemption. However, in *Kornblum* the vendee brought suit for rescission and repayment of past installments. The vendor did not oppose the judgment allowing the vendee the opportunity to perform. Indeed, since in the interim the real estate market had collapsed it was in the vendor's best interests to have the vendee perform.

The majority also cite: (1) *Cross* v. *Mayo* (1914) 167 Cal. 594 [140 P. 283] (in that case the *vendor* asked the court to fix a time for the vendee to perform before foreclosing his rights in the property); (2) *Odd Fellows' Sav. Bank* v. *Brander* (1899) 124 Cal. 255 [56 P. 1109] (there the vendee, not the vendor, challenged the trial court's judgment allowing time to perform); (3) *Southern Pacific R.R. Co.* v. *Allen* (1896) 112 Cal. 455 [44 P. 796] (again, it was the vendor who sought a judgment foreclosing the vendee's interest after allowing time to perform); (4) *Fairchild* v. *Mullan* (1891) 90 Cal. 190 [27 P. 201] (in that case the vendor did not challenge the trial court's allowance of time to perform).

Thus we have never held that a wilfully defaulting vendee must be permitted an additional opportunity to perform on an installment land sale contract. Rather, the right to redeem is dependent on the facts, and the trial court has discretion to weigh the equities of the case to determine the just result. (*Bartley* v. *Karas* (1983) 150 Cal.App.3d 336, 344 [197 Cal.Rptr. 749]; *Kosloff* v. *Castle* (1981) 115 Cal.App.3d 369, 376 [171 Cal.Rptr. 308]; *Kay* v. *Kay* (1961) 188 Cal.App.2d 214, 219 [10 Cal.Rptr. 196]; *Scarbery* v. *Bill Patch Land & Water Co.* (1960) 184 Cal.App.2d 87, 103, 106 [7 Cal.Rptr. 408]; *Petersen* v. *Ridenour* (1955) 135 Cal.App.2d 720, 728-730 [287 P.2d 848]; see also *MacFadden* v. *Walker* (1971) 5 Cal.3d 809, 814 [97 Cal.Rptr. 537, 488 P.2d 1353, 55 A.L.R.3d 1] ["wilfully defaulting vendees (are entitled to) specific performance *in proper cases*" (italics added)].) The majority, while claiming to respect stare decisis, actually renege on the clear holdings in prior cases to forge an unprecedented new rule. They have denied the right of this trial court to exercise its discretion.

Reliance is placed on the policy against forfeitures. (*Freedman* v. *The Rector* (1951) 37 Cal.2d 16, 20 [230 P.2d 629, 31 A.L.R.2d 1]; *Barkis* v. *Scott* (1949) 34 Cal.2d 116, 122 [208 P.2d 367].) But two kinds of forfeitures are presented when a vendee party to an installment land sale contract defaults and title is quieted in the vendor: the loss of installments previously paid and the loss of the benefit of the bargain. (See *Kosloff* v. *Castle, supra,* 115 Cal.App.3d 369, 376.) The policy against forfeitures prevents a court from quieting title in the vendor unless he refunds to the vendee the excess of previously paid installments above his damages from the default. (*Freedman* v. *The Rector, supra,* 37 Cal.2d at p. 22.) However, there is no such application of the policy against forfeitures to the loss of the benefit of the bargain. In fact, our cases have specifically held otherwise.

In *Barkis* v. *Scott, supra,* 34 Cal.2d 116, 122, we discussed *Henck* v. *Lake Hemet Water Co.* (1937) 9 Cal.2d 136 [69 P.2d 849], in which "the only forfeiture that was involved was a loss of the benefit of the bargain, and the situation was therefore analogous to that where the contract is still wholly executory and no substantial expenditures have been made in reliance on it." We went on to emphasize that "It is settled that in such situations *relief from default cannot be granted . . . .*" (Italics added.) In *Honey* v. *Henry's Franchise Leasing Corp.* (1966) 64 Cal.2d 801, 804 [52 Cal.Rptr. 18, 415 P.2d 833], we held that "When a vendee has materially breached his contract, the vendor has an election to rescind or to enforce the contract. [Citations.] The defaulting vendee, however, has no such election. Otherwise, the contract of sale would in effect be a lease with an option to purchase. The vendee would receive the benefit of any increase in value of the property, and the vendor would bear the entire risk of any decrease

in its value. *Such protection to a defaulting vendee would go beyond that provided by anti-deficiency legislation, which places the risk of depreciation in value on the vendor only to the extent that the value of the property may decrease below the amount still owing on the contract.*"[1] (Italics added.)

Thus precedent and policy mandate against providing redemption to vendees defaulting on their installment land sale contracts. We are urged by amicus curiae Professor Hetland that such a remedy should nevertheless be granted because it is available to mortgagors and trustors under deeds of trust. He maintains that installment land sale contracts are functionally equivalent to these devices, and thus the remedies available to the vendor and vendee in each case should be the same. While there is a surface appeal to this argument, it ignores a basic and fundamental difference between installment land sale contracts on the one hand and mortgages and deeds of trust on the other—the transfer of title.

Civil Code section 2924 defines a mortgage as "Every transfer of an interest in property, other than in trust, made only as a security for the performance of another act . . . ." By contrast, Civil Code section 2985 defines a real property sale contract as "an agreement wherein one party agrees to convey title to real property to another party upon the satisfaction of specified conditions set forth in the contract . . . ." "In comparing the remedies for breach of the installment land contract with the remedies under a mortgage or deed of trust, the important distinction is that title does not pass to the buyer under the contract until the contract is fulfilled. In contrast, the mortgagor or the trustor under a deed of trust receives immediate title and then hypothecates the property as security for the unpaid balance of the purchase price (the mortgage or deed of trust may secure any obligation, not just the unpaid purchase price, whereas the installment land contract can only be used as a security device by the seller to secure the balance of the purchase price)." (Graham, *The Installment Land Contract in California: Is It Really a Mortgage?* (Cont.Ed.Bar 1981) 4 Real Property L. Rep. 117, 118.)

The holding of title is significant for a number of reasons. First, the rights and remedies that attend ownership are distinctive. When the buyer acquires title, he obtains an equity in the land that can be extinguished only by a private or judicial sale; without title the buyer has only his contract. Second, when title or possession passes, the risk of loss passes. (Civ. Code, § 1662.) Third, since the remedies available to parties for different types of land sale

---

[1]In *MacFadden* v. *Walker, supra,* 5 Cal.3d 809, 814-815, we held that because neither party in *Honey* sought specific performance, the above-quoted language does not preclude such a remedy. However, it does not indicate that the policy against forfeitures *requires* specific performance; rather, the policy has no bearing on loss of the benefit of the bargain.

arrangements have been varied—that is, until today—the parties could choose among them the form of agreement that best suited their needs. If they chose to enter an installment land sale contract, they knew that should the wilfully defaulting vendee request redemption, the court would weigh the equities to determine whether such relief was just. If the parties chose to provide the vendee with an absolute right to redemption, other land sale devices were available.

As the majority readily admit, the equities in the case at bar weigh heavily against the vendees. "The Petersens' monthly payments were erratic and delinquent almost from the beginning even though the seller made clear her need of the payments for her support. By April 1973 the Petersens had made only 58 out of the 65 payments then due, and their first attempt to reinstate the contract was not until 29 months later, when they tendered $250 out of the $1,800 that was by then overdue and unpaid." (*Ante*, p. 112.)

As between the deliberately defaulting vendees and the elderly vendor who desperately needed the modest payments on the contract for her very survival, the equities clearly favor the latter. I am mystified at how the majority can conclude the ends of justice compel their callous result and rejection of the trial court's rational exercise of discretion. There being no reason to overturn our prior cases and ignore the policies clearly articulated therein, I would affirm the judgment denying the vendees specific performance.

Lucas, J., concurred.