# FILED

MAR 20 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

## UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

| | |
|---|---|
| DOUGLAS B. NUROCK, Individually, and as Trustee of the Michael K Moezzi Family Trust UA 4/16/2003, | No. 15-56738 |
| Plaintiff, | DC No. CV 11-10284 PJW |
| and | MEMORANDUM* |
| TED KEY; LAURA KEY, | |
| Plaintiffs-Appellants, | |
| v. | |
| PELICAN EYES HOLDING COMPANY LLC, a California limited liability company; PELICAN RESCUE LLC, a California limited liability company; JAMES K. HANKLA, an individual; MICHAEL J. EMLING, an individual, | |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Central District of California
Patrick J. Walsh, Magistrate Judge, Presiding

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Argued and Submitted March 10, 2017
Pasadena, California

Before:       TASHIMA and NGUYEN, Circuit Judges, and MARBLEY,[**] District Judge.

Ted and Laura Key appeal the denial of their motion to enforce a settlement agreement between themselves and appellees Pelican Eyes Holding Company ("PEHC"), Pelican Rescue LLC, James Kirk Hankla, and Michael J. Emling (collectively, "Pelican Parties"). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

In 2006, the Keys purchased an undeveloped residence in Pelican Eyes Resort, located on the Pacific Coast of Nicaragua. Before construction on the residence was complete and before the Keys acquired title to it, the entity from which the Keys had purchased the property became insolvent. PEHC later acquired the resort. In 2011, the Keys and other similarly situated buyers sued the Pelican Parties, asserting federal claims under the Securities Act and Securities and Exchange Act, and state law claims for fraud, breach of fiduciary duty, and breach of contract.

---

[**]     The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

The Pelican Parties and the Keys executed a settlement agreement, under which, in exchange for a release of their claims, the Keys obtained the option to buy Casa Alegria, a completed residence that was larger than the one they had originally purchased. The agreement provided that the Keys could obtain Casa Alegria by buying and tendering to PEHC 1,344,389.38 class B shares of PEHC ("shares") by April 6, 2015. PEHC had issued such shares to the Keys and others who had purchased incomplete properties at the resort, in an amount equal to the amount that each had paid for his original residence. The Keys could buy the additional shares that they needed to reach 1,344,389.38 from other shareholders willing to sell their shares, or directly from PEHC. The agreed-upon price for the directly-purchased shares was $0.10 per share.

After the settlement, the Keys tried to obtain 1,344,389.38 shares. They negotiated with a number of other shareholders. They were also in contact with Hankla, a member of the PEHC board, about logistical matters, such as how to accomplish the transfer of shares to themselves from third parties and from themselves to PEHC. Eventually, Hankla stopped responding to the Keys' calls and messages. On April 12, Emling, another member of the PEHC board, informed the Keys that the deadline for purchasing Casa Alegria had passed.

The Keys moved to enforce the settlement agreement on the ground that the Pelican Parties had thwarted the Keys' attempt to tender the requisite number of shares, and had breached the settlement agreement by failing to cooperate with the Keys.[1] The magistrate judge denied the motion, finding that "even assuming that Mr. Hankla had returned Mr. Key's calls and texts and met with him on April 6th, Mr. Key did not have enough shares to complete the deal." Specifically, the court found that, as of April 6, the Keys were 1,145,889.38 shares short of the number that they needed under the agreement. The court found that the Keys were short of the requisite shares for a number of reasons: they had purported to purchase shares from individuals who did not own shares; from others who never agreed to sell to the Keys; and still others who did not agree to make the sale until after the April 6 deadline. The court also concluded that the Pelican Parties' failure to communicate with the Keys just prior to the deadline was not a breach of the agreement's requirement to cooperate, because the contract did not require the Pelican Parties "to help Mr. Key assemble the necessary shares."

The Keys timely appealed. We review "factual findings as to what the parties said or did . . . under the 'clearly erroneous' standard." *L.K. Comstock &*

---

[1] The settlement agreement provided that the magistrate judge who had presided over their case would retain jurisdiction to enforce the agreement. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 381–82 (1994).

4

*Co., Inc. v. United Eng'rs & Constructors Inc.*, 880 F.2d 219, 221 (9th Cir. 1989).

We review "principles of contract interpretation applied to the facts . . . de novo."

*Id.*  We review the denial of equitable relief for abuse of discretion.  *See Dollar*

*Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 174 (9th Cir. 1989).

**1(a).**  The Keys first argue that the Pelican Parties breached the settlement

agreement by preventing the Keys from tendering 1,344,389.38 shares to PEHC.

Tendering those shares was a condition precedent to the transfer of Casa Alegria.

*See* Cal. Civ. Code § 1436.  "[W]here one contracting party prevents the other's

performance of a condition precedent, the party burdened by the condition is

excused from performing it, and the benefited party's duty of performance

becomes unconditional."  *City of Hollister v. Monterey Ins. Co.*, 81 Cal. Rptr. 3d

72, 100 (Ct. App. 2008).  The Pelican Parties, however, did not prevent the

fulfillment of the condition.  As the magistrate judge found, even if the Pelican

Parties intended to thwart the Keys by failing to respond to their inquiries in the

last few days before April 6, that conduct was not the cause of the Keys' failure to

tender the requisite shares.  Rather, the Keys failed to purchase enough shares in

the first place.  This finding is not clearly erroneous.

**(b).**  The Keys next argue that the Pelican Parties breached the settlement

agreement by failing to explain to the Keys how, logistically, to obtain the shares

they had purchased or were going to purchase from third parties. In support, the Keys point to a provision of the agreement requiring the parties to "cooperate as may be necessary and/or desirable to effectuate" the agreement's purpose. The magistrate judge, however, found that the evidence did not show that such term was intended to require the Pelican Parties "to help Mr. Key assemble the necessary shares." The magistrate judge thus declined to construe the contract as requiring the Pelican Parties affirmatively to facilitate the transfer of shares from third parties to the Keys. That construction of the settlement agreement is not erroneous. The agreement provided that the Keys' acquisition of additional shares from other owners would be a "private transaction" and the Pelican Parties' only obligation with respect to that transaction was not to "hinder" it. Thus, the Pelican Parties did not breach the agreement.

2.      The Keys contend that, in light of the Pelican Parties' allegedly inequitable conduct, this court should compel the Pelican Parties either to transfer ownership of Casa Alegria to the Keys, or to extend the deadline for gathering the requisite number of shares. The magistrate judge concluded that the Keys were not entitled to equitable relief because "both parties are to blame" for the fact that the "deal was not performed on time under the terms of the agreement," and that nothing the Pelican Parties "did or failed to do was so egregious as to justify

6

requiring them to transfer Casa Alegria to Mr. Key now." This conclusion was not an abuse of discretion.

3.    Finally, the Keys suggest that they have suffered a forfeiture. The authorities they cite uniformly hold that a buyer of land under an installment contract who has defaulted on the installment payments has the right to cure by tendering the remaining amount due under the contract. *See, e.g.*, *Petersen v. Hartell*, 707 P.2d 232, 242 (Cal. 1985).

But these cases are inapposite. Although the Keys may have suffered a loss, assuming that the shares they own are now worthless as they allege, equity does not demand that such loss be shifted to the Pelican Parties. Unlike in the forfeiture cases on which the Keys rely, the Pelican Parties were not unjustly enriched by the Keys' attempt to perform under the contract, because the Keys made no payments to the Pelican Parties.[2] Instead, the Keys purchased some shares from third parties and failed to purchase enough by the deadline. Although the Keys allege that they paid the Pelican Parties' predecessor for a residence to which the Keys never obtained title, that is a claim that was released when, represented by counsel, the Keys agreed to settle in exchange for the *option* to obtain a larger dwelling by

---

[2]    The Keys did pay $9,100 to PEHC, but this sum was held in escrow for the benefit of a seller of shares to the Keys, or for the Keys, depending on whether the sale was consummated.

collecting and tendering shares to PEHC by April 6, 2015. Under the settlement agreement, the Keys failed timely to exercise their option and have forfeited nothing. *See Holiday Inns of Am., Inc. v. Knight*, 450 P.2d 42, 44 (Cal. 1969) ("[T]he time within which an option must be exercised . . . cannot be extended beyond that provided in the contract," because "[t]o hold otherwise would give the optionee, not the option he bargained for, but a longer and therefore more extensive option.").

     **AFFIRMED.**